[Civ. No. 3875.  Third Appellate District.—May 14, 1930.]

H. C. ROLOFF, Respondent, v. OSCAR HUNDEBY et al., Appellants.

646

H. Hugh Sydenham and S. W. Greene for Appellants.

Chester F. Gannon and P. H. Johnson for Respondent.

PARKER, J., *pro tem.*—This is an action for damages for fraudulent representations whereby defendants procured an exchange of property between themselves and the plain-

tiff. Defendants appeal from a judgment in favor of the plaintiff. The appeal presents questions of mixed law and fact which necessitates somewhat of a review of the case as found.

While appellants concede the finality of the trial court's determination on the conflicting facts, at the same time they ignore the court's findings, and base their arguments as to the sufficiency of the evidence upon their view of the evidence in the light most favorable to them. We will not attempt to follow them in this particular. There was sufficient competent evidence to establish the facts as they will be herein narrated.

Plaintiff was a man wholly unfamiliar with business affairs. He was a plasterer by trade, and it was while he was engaged in plastering a church that he met defendant Hundeby. Hundeby was on the building committee of the church, and as a member of that committee had employed the plaintiff, and to that extent supervised the work of the mechanics. Continuing the acquaintance thus made, Hundeby called upon plaintiff at the latter's home and suggested to him a trade or exchange of properties whereby plaintiff would secure a ranch in Minnesota and defendant would obtain the land of plaintiff in Sacramento County. Defendant Hundeby stated that his sisters owned 160 acres in Minnesota, and that the family was desirous to trade the Minnesota property for California property because the latter could be used in the Los Angeles deal. Hundeby told plaintiff that he would find out all of the details concerning the Minnesota land and would advise him thereon. Accordingly, after a brief lapse of time, Hundeby again visited the plaintiff and told him that he had heard from his sisters, and he then gave him more details of the Minnesota property. He told him that the property consisted of 160 acres of good timber land, though he did not know how many trees were on the land, but that he would get that data. He said further that his father was a good judge of land and that the father had selected this particular tract of land for his heirs. He said further: "You can depend upon my word; it is true what I am telling you."

Thereafter, Hundeby called upon plaintiff, bringing with him a written description of the Minnesota property. The written description is as follows: "Copy of Martin's de-

scription to me. S. W. ¼ Sec. 23, Twp. 42, Range 17, 160 acres, Pine Co. Six miles west of Marksville, Minn. (Pine county) on the Soo Ry. Fifty miles south of Duluth and about 100 miles north of Minneapolis. Main road along west side connects 1½ miles north with State Highway-Marksville to Sandstone. Rich black soil about a foot deep, and clay sub-soil about 3 feet. Gently rolling land, mostly fairly easily cleared. About 15,000 standing White Pine—10,000 Basswood and 8,000 Red Oak; also considerable Birch and Hard Maple cord-wood. Some rocks on surface only. Small river runs through northwest corner. Similar unimproved land in this section selling at about $30.00 per acre." After further discussions, plaintiff stated to defendant Hundeby that the trade would be made providing everything was as represented, whereupon Hundeby again assured him: "You can depend upon my word—my father was an expert on land, and he picked this land out for his heirs." Hundeby stated the land was worth $30 per acre. He explained the written description of the land, and stated that it was a true description and that he used to live back in Minnesota, many times assuring plaintiff that he could rely upon his word. Thereafter the trade was made, and, relying upon the representations made by Hundeby, plaintiff exchanged his property for the Minnesota land.

Appellant first contends that if it is held that all of these statements were made, yet they cannot be held to be representations, the truth or falsity of which could in anywise affect the transaction. In other words, that they were merely matters of opinion. The case of *Herdan* v. *Hanson*, 182 Cal. 540 [189 Pac. 440, 444], furnishes a complete answer to this contention. There the general rule is stated as follows: "When a statement concerning a subject matter of a transaction, which might otherwise be only an expression of opinion, is affirmed as an existing fact material to the transaction, and reasonably induces the other party to consider and rely upon it as a fact, the statement then becomes an affirmation of fact within the meaning of the general rule as to fraudulent representations. This rule is frequently, and properly, applied to statements concerning the value of land at a distance, when the party to whom the statements are made possesses no other information and is not in a position to investigate. Whether the statements

as to value in this case were affirmed in such a manner as to permit reliance upon them by plaintiff as statements of actual facts within the knowledge of defendants, was a question of fact to be determined by the trial court.'' The rule is affirmed in the following cases: *Harris* v. *Miller,* 196 Cal. 13 [235 Pac. 981]; *Cole Bros.* v. *Dimmick,* 89 Cal. App. 525 [264 Pac. 1112]; *Colt* v. *Freitas,* 76 Cal. App. 286 [244 Pac. 916]. In *Haserot* v. *Keller,* 67 Cal. App. 659–670 [228 Pac. 383, 388], it is said: ''When one of the parties possesses, or assumes to possess, superior knowledge or special information regarding the subject matter of the representation, and the other party is so situated that he may reasonably rely upon such supposed superior knowledge or special information, a representation made by the party possessing or assuming to possess such knowledge or information, though it be regarded as but the expression of an opinion if made by any other person, is not excused if it be false.'' These authorities, so uniform and clear, leave no room for speculation. We conclude that appellants' first contention is without merit.

Next, appellants contend that if the statements are classed as material representations, then plaintiff has failed to prove wherein these statements are untrue. This contention is necessarily argumentative and leads us directly into the field of disputed fact. The trial court found that the representation made by defendants, that the land was situated six miles from Marksville, was not true, but that it was situated eight miles therefrom. The court further found that the representations were untrue in that, as a matter of fact and in truth, the majority of all timber had been cut and removed from the land, and that said land was not rich, black soil, but was sandy, covered with rocks and untillable. That said representations were known to defendants to be untrue, and made for the purpose of deceiving and defrauding plaintiff, and that said plaintiff relied thereon, and was deceived and defrauded. The court's findings are amply supported by competent evidence. True, there was evidence from which the court might have reached a different conclusion. This, however, is not our concern here. (*Hotaling* v. *Hotaling,* 187 Cal. 699 [203 Pac. 745].) Therefore, we see no merit in this second contention of the appellants.

■ The next argument of appellants merits little consideration for many reasons. It is argued that the court erred in permitting a witness to give his opinion as to the value of certain lands in question. There is nothing in the record before us to indicate the error complained of. All that appears is the single question and answer, and appellants' objection, that no proper foundation had been laid. The transcript of evidence, no portion of which appears in or as an appendix to the brief, discloses that much other testimony was before the court, and even if we assume that the evidence objected to was inadmissible, we can discover no resulting injury to have followed the error.

■ Lastly, appellants contend that the findings of fact are insufficient to support the judgment, and that the court below failed to find in response to the material issues. It is claimed that there is no finding of fact as to the amount of damages. The findings of fact and conclusions of law are prepared as one document. The court finds on all of the facts up to the fact of damages and the sole finding thereon which is embraced within that category labeled ''Findings of Fact'' is finding XII, which reads thus: ''That plaintiff has been damaged by reason of the fraud and deceit practiced upon him by said defendants.'' Then follows certain paragraphs under the heading, ''Conclusions of Law,'' and the first so-called conclusion is: ''That plaintiff is entitled to receive of and from said defendants the sum of Eight Hundred Eighty-one and 50/100 ($881.50) Dollars.'' This is all we find on the question of damages, or the amount thereof.

The matter of findings has always presented difficulties to the courts and to the profession. Formerly the requirements were strict and the decisions held the parties to strict compliance therewith. Much apparent injustice resulted until there was a somewhat well-reasoned and well-supported effort to secure legislation which would dispense with findings entirely. However, it was determined that much harm could result from the absence of findings on the issues. Yet the potential evils of a too strict construction having become manifest, the policy of courts of review became one of reasonable interpretation of the findings as a whole, and that policy continues to the present day. Likewise, it is true that the matter of findings became of such importance that it was incorporated with our organic law. (Const.,

art. VI, sec. 4¾.) The mechanical features of the findings are of little importance. If the court inaccurately describes a finding of fact as a conclusion of law it still stands only as a finding of fact. The case of *Jessen* v. *Peterson Co.,* 18 Cal. App. 352 [123 Pac. 219], is squarely in point, and the mere citation suffices, without attempting quotation therefrom. Pursuant to the rule there announced we may, and must, consider the so-called conclusion of law as in reality a finding of fact, and as such, coupled with the finding quoted, it makes a complete response to the issue of damages. (See, also, *Berry* v. *Crowell,* 55 Cal. App. 537 [203 Pac. 835]; *Erskine* v. *Marchant,* 37 Cal. App. 590 [174 Pac. 74]; *Krasky* v. *Wollpert,* 134 Cal. 338 [66 Pac. 309]; *Hulen* v. *Stuart,* 191 Cal. 571 [217 Pac. 750].)

It is finally contended there are no findings of fact as to the values of the different pieces of property, and, therefore, it cannot be determined in what manner the court arrived at the finding of plaintiff's damages in the sum of $881.50. Defendants' chief ground of complaint here seems to be that the court did not find the damage to be in a much larger amount. In fact, they claim that the proper amount that should have been awarded plaintiff was some $19,000. Appellants may be reminded that there still remains the "court of conscience," with themselves as judges. If they insist that the plaintiff has not been sufficiently compensated for the fraud perpetrated upon him, it is not unlawful for them to make voluntary payment of any additional sum. As a matter of review, however, a judgment will not be reversed merely because it appears therefrom that the appellants have been unduly advantaged thereby. (Cal. Jur. 1928 Supp., p. 149, sec. 493, and authorities cited thereunder.)

The evidence before the court, in values, covered a wide range. The plaintiff's land embraced some fifteen acres, the value of which, from the record, might be anywhere from $50 per acre to $165 per acre, making a gross range from $750 to $2,475. The value of the Minnesota lands, as the testimony discloses, might run from $5 per acre to $25 per acre, with the gross of 160 acres from $800 to $4,000. The trial court, in applying the measure of damages as the difference in values of the two pieces, arrived at the sum named, to wit: $881.50. Doubtless the court had in mind the fact that defendants realized from the sale of plaintiff's

land the sum of $2,475, and placing the highest value of $1600 on defendants' lands, as testified to by reliable witnesses, found the sum indicated.

It is true that the difference in values is not the true measure of damages, but the Supreme Court has said in *Wood* v. *Niemeyer*, 185 Cal. 526 [197 Pac. 795]: "It is a settled rule of law in this state, applicable to actions for deceit in the exchange of real estate, that the plaintiff, as the party found to have been defrauded, is entitled to recover the difference between the actual value of the property which he received and the value which it would have had if the representations as to the value thereof had been true. In the same case, answering a contention that the wrong measure of damages had been applied, the court says that appellant has but little cause for complaint as to the amount of damages awarded, when, as a matter of law, upon the facts found, the trial court should have awarded the plaintiff much more, where the award was on a mistaken theory that the measure of damages was the difference between the actual value of the exchanged properties. Again, in the instant case, if we take the view that the court did adopt the true measure of damages, as stated, there is evidence that the land of appellants was actually worth from $20 to $25 per acre, as against a represented value of $30 per acre, which would make the amount of damage figure as awarded.

The views herein announced find ample support in the authorities cited, *supra*. In addition thereto it has been held that a trial court need not, in its findings, diagram its process of computation. (*Erskine* v. *Marchant*, 37 Cal. App. 590 [174 Pac. 74]; *Klegman* v. *Moyer*, 91 Cal. App. 346 [266 Pac. 1009].) Let it not be understood that we approve this loose method of preparing findings upon which a judgment must rest. Far from it. While such looseness may, after scrutiny, be declared harmless or subject to an interpretation based upon the presumption of the validity of the judgment, yet in its general effect upon the law itself it is harmful and tends to disintegrate the rules of safe procedure. Questions of value are almost always matters of opinion, and evidence thereon usually goes no further than to give the court more or less general ideas on the subject. From the evidence thus received a trial court must draw its own conclusions of value by a process of balancing and

reconciling, if possible, the varying opinions. Rarely, if ever, can the true rule of the measure of damages work out in these cases. Too often an anxious trader makes representations which, if true, would make his property worth millions of dollars in an exchange which, at most, involves only a small sum. ■ Therefore, the trial court, in an effort to attain an even justice, often exercises a wide discretion in awarding damages. We do not hold that the trial court may indulge this discretion against the plain mandates of the law, but we do hold that where the only complaint arising from such a course is the claim of defendants that plaintiff has not been awarded a sufficient sum as damages, the judgment will not be disturbed.

No other points are urged.

The judgment is affirmed.

Thompson (R. L.), J., and Plummer, Acting P. J., concurred.

A petition for a rehearing of this cause was denied by the District Court of Appeal on June 13, 1930, and a petition by appellants to have the cause heard in the Supreme Court, after judgment in the District Court of Appeal, was denied by the Supreme Court on July 7, 1930.