[Civ. No. 45399. First Dist., Div. Three. Feb. 23, 1981.]

PARK & SHOP MARKETS, INC., et al., Plaintiffs and Appellants, v. CITY OF BERKELEY et al., Defendants and Respondents.

COUNSEL

Thomas W. Latham and Evans, Latham & Campisi for Plaintiffs and Appellants.

Michael Lawson and Natalie E. West, City Attorneys, Theodore R. Lakey, Acting City Attorney, and Charles O. Triebel, Jr., for Defendants and Respondents.

Douglas J. Maloney, County Counsel (Marin), and Patrick K. Faulkner, Deputy County Counsel, as Amici Curiae on behalf of Defendants and Respondents.

OPINION

**FEINBERG, J.**—Appellants, retail grocers doing business in the City of Berkeley, brought this action to have Berkeley City Ordinance No. 4830-N.S. declared invalid.[1] The court struck section 2c(3) from the ordinance while upholding the remainder. Appellants appeal from the judgment, except insofar as section 2c(3) was held invalid.[2]

The City Council of Berkeley found that in Berkeley there is a serious problem in the disposal of solid waste. Further, the council found that the sale of malt beverages and soft drinks in nonrefillable or disposable containers exacerbates the quantity of litter and solid waste.

---

[1]The text of the ordinance is set out in the appendix.
[2]All section references are to this ordinance unless otherwise specified.

To ameliorate these difficulties, the ordinance (§ 2a) requires that there shall be a deposit of not less than five cents on every container (refillable and nonrefillable) containing a malt beverage or a soft drink sold at retail in the City of Berkeley. One exception is provided to the five-cent deposit: in the case of a refillable container, the retailer may require not less than two cents as a deposit if the retailer's distributor refunds two cents or more to the retailer upon return of the refillable container. The deposit, of course, is to be refunded to the consumer at such time as he returns the container.

Beverages sold in refillables are accompanied by a refundable bottle deposit. Deposits do not ordinarily accompany nonrefillables. While beverages cost less in refillables (excluding deposits), consumers are willing to pay for the convenience of nonrefillable throwaways. The council anticipates that by requiring deposits on nonrefillables, consumers will purchase more beverages in refillables as against nonrefillables.

Thus, the council believes, (1) solid waste will be reduced because more refillable containers will be sold reducing the solid waste caused by nonrefillable containers; and (2) litter will be reduced because the purchasing public, rather than throwing nonrefillable containers away in public places, will return them in order to secure a refund of the deposit.

In Berkeley's neighboring cities, retailers do not collect deposits on nonrefillables. Without some sort of safeguard, Berkeley retailers might be forced to "refund" deposits which were never collected (i.e., on nonrefillables obtained outside of Berkeley). Sections 2c and 2c(2) are intended to prevent this. Section 2c provides that retailers may mark or issue coupons with the sale of nonrefillables. Section 2c(2) provides that retailers may refuse to pay for the return of nonrefillables which are not marked or accompanied by coupons.[3]

Section 5 provides that a retailer is subject to criminal sanctions ($50 fine or 6 months in jail, or both) for violating the ordinance.

---

[3]Nonrefillables obtained from supermarkets for the sake of economy might be returned to small neighborhood stores for the sake of convenience. Thus, the neighborhood stores might be required to refund more deposits than they collect. Distinctive container markings or coupons would prevent this result.

Appellants assert the invalidity of the ordinance on a number of grounds:

1. The ordinance deprives them of due process because (a) it is uncertain, ambiguous and internally inconsistent, (b) it is not rationally related to its stated purpose, and (c) it is confiscatory in effect;

2. The ordinance deprives them of equal protection of the laws in that it singles out for regulation the sale of malt beverages and soft drinks and omits other beverages sold in nonrefillable containers;

3. The ordinance fails insofar as it affects the sale of malt beverages because that subject is preempted by the state in that section 22, article XX of the California Constitution reserves to the state the exclusive power to regulate the sale of alcoholic beverages.

We proceed to discuss these contentions.

A. *Due Process*

1. *Uncertainty, Ambiguity and Inconsistency.*

■ The uncertainty or inconsistency of a legislative enactment is measured against the standard announced in *United States* v. *Harriss* (1954) 347 U.S. 612, 617-618 [98 L.Ed. 989, 996-997, 74 S.Ct. 808]: "The constitutional requirement of definiteness is violated by a criminal statute that fails to give a person of ordinary intelligence fair notice that his contemplated conduct is forbidden by the statute. The underlying principle is that no man shall be held criminally responsible for conduct which he could not reasonably understand to be proscribed. [¶] On the other hand, if the general class of offenses to which the statute is directed is plainly within its terms, the statute will not be struck down as vague, even though marginal cases could be put where doubts might arise. [Citation.] And if this general class of offenses can be made constitutionally definite by a reasonable construction of the statute, this Court is under a duty to give the statute that construction."

■ Appellants contend that the term "refillable container" is uncertain. "Refillable container" is defined by section 1i as a container which the distributor buys back from the retailer for a minimum of 2 cents. Appellants note that a distributor may at any time change its policy regarding the amount it will pay a retailer for a particular type of

container or it may go out of business altogether. The ordinance does not require distributors to notify retailers of such circumstances. Therefore, whether a particular bottle is a "refillable container" under the ordinance is subject to change without notice to retailers. Appellants conclude that a retailer cannot be certain of the correct deposit to collect or refund, and may unintentionally violate the provisions of the ordinance.[4]

Appellants' example is an illustration of the proposition recited in *Harriss, supra*, that a statute otherwise plain on its face will not be struck down as uncertain "even though marginal cases could be put where doubts might arise." (347 U.S. at p. 617 [98 L.Ed at p. 996].)

Further, the retailer may choose to require a 5-cent deposit for both refillable and nonrefillable containers. In such a case, the problem apprehended by appellants will simply not arise.

■ Finally, the fact that an ordinance may be violated by an innocent mistake of fact (taking an insufficient deposit under the misapprehension that the container is refillable) does not make the ordinance unconstitutional. "It has long been recognized that statutory 'public welfare' offenses such as here involved require neither guilty knowledge nor intent." (*Anntex Pest Control Co.* v. *Structural Pest Control Bd.* (1980) 108 Cal.App.3d 696, 702 [166 Cal.Rptr. 763]; see also Witkin, Cal. Crimes, pp. 66-68; Pershing, Criminal Law, pp. 784-786.)

■ Appellants further contend that the phrase "kind, size and brand sold by the vendor" as used in section 2d, is ambiguous. They assert that it is impossible to tell whether that phrase is limited to the kinds, sizes and brands sold by the retailer at the time the consumer returns a refillable for a refund or whether the phrase also embraces all kinds, sizes and brands sold by the retailer at any time in the retailer's history of doing business. The latter reading, if adopted, would require the retailer to pay the consumer for a refillable which the retailer no longer handles or may never have stocked.[5] Such an interpretation would create an unreasonable burden on the retailer. However, we construe the phrase "kinds, sizes and brands sold" as being limited to the types of bottles which the retailer is selling at the time the refillable is re-

---

[4]Appellants employ a similar hypothetical situation in an attempt to illustrate that sections 2c and 2d are uncertain.

[5]Again, we point out that the situation arises only where the retailer neither marks

turned for a refund. This "reasonable and practical construction" cures the ambiguity, if an ambiguity in fact existed. (See *County of Nevada v. MacMillen* (1974) 11 Cal.3d 662, 673 [114 Cal.Rptr. 345, 522 P.2d 1345].)

■ The trial court found section 2c(3) to be inconsistent with the balance of the ordinance. The inconsistency arises because retailers complying with section 2c(2) by issuing coupons would still be required to accept and pay for the return of any nonrefillable in accordance with section 2c(3). Such an untenable possibility existed because 2c(3) does not accommodate retailers who choose to issue coupons.

The chairperson of the advisory committee testified that the city council amended the ordinance to allow retailers to issue coupons as an alternative to marking. Thus, it was apparently an inadvertence that section 2c(3) was not amended to allow for coupons so as not to defeat section 2c(2). The question remains, however, whether the ordinance can be preserved merely by striking 2c(3) or whether, as appellants argue, the entire ordinance must be declared fundamentally inconsistent and invalid.

"When part of a statute is declared unconstitutional, the remainder will stand if it is complete in itself and would have been adopted by the legislative body had the latter foreseen the partial invalidation of the statute." (*In re Bell* (1942) 19 Cal.2d 488, 498 [122 P.2d 22].)

Section 2c sets out the retailer's options under the ordinance: retailers who choose not to mark containers or issue coupons are left with "accepting any nonrefillable container and making the appropriate refund thereon." Section 2c, while couched in more neutral terms, accomplishes substantially the same result as 2c(3). Thus, absent section 2c(3), the ordinance remains complete in itself and substantially unchanged.

Section 6 of the ordinance contains a severability clause. Such a clause is persuasive evidence that "the legislature would have passed the act, irrespective of the invalidity of any particular portion thereof." (*In re Weisberg* (1932) 215 Cal. 624, 632 [12 P.2d 446]; see also 5 Witkin, Summary of Cal. Law, § 66.)

---

the refillable container nor issues a coupon thereon. If the retailer has done either, then he knows when the bottle is returned, that he had collected a deposit and must return it whether he presently stocks the item or not.

We conclude that section 2c(3) may be stricken from the ordinance while the remainder stands.

### 2. *Rational Relationship to Stated Purpose.*

■ Appellants argue that the evidence does not substantially support the conclusion that the ordinance will reduce solid waste. The chairperson of the advisory committee to the city council testified, however, that the ordinance will reduce solid waste by at least 4 percent. Furthermore, the intended effect of the ordinance is to encourage and thereby increase the purchase of beverages in refillables, while discouraging the use of nonrefillables. To the extent this effect is accomplished, more containers will be refilled and fewer will become waste. As a result, solid waste will be reduced.[6]

Appellants also argue that the ordinance is not rationally related to the reduction of litter. However, part of the litter in Berkeley consists of nonrefillables. The statutory deposit on nonrefillables will result in the return of many nonrefillables to the retailers for refunds. Certainly, some of the returned nonrefillables would otherwise become litter. Thus, the effect of the ordinance should be to reduce litter.

■ Appellants contend that the trial court did not find on the material issue of whether the ordinance will effectively reduce litter and solid waste. From this appellants conclude that the trial court failed to find on a material issue and that consequently the judgment must be reversed. (*Guardianship of Brown* (1976) 16 Cal.3d 326, 333 [128 Cal.Rptr. 10, 546 P.2d 298].) The trial court determined in its conclusions of law, however, that the ordinance is "rationally related to the end sought to be achieved, to wit: reduction of solid waste and litter generated in the City of Berkeley...." Whether the court's determination was properly made as a conclusion of law rather than as a finding of fact is of little importance. (*Roloff* v. *Hundeby* (1930) 105 Cal.App. 645, 651 [288 P. 702].) Thus, the claim that a material finding of fact was not made is without merit.

---

[6]Some evidence indicates that the weight of a refillable bottle divided by the average number of times it is returned to the bottler for refilling is more than the weight of a nonrefillable aluminum can. Appellants conclude that refillables contribute more than nonrefillables to the weight of solid waste in Berkeley. However, the record does not indicate how the weight of a refillable compares to the weight of a nonrefillable *bottle*. The record also does not indicate that returnables which are not returned to bottlers become waste; they may be recycled.

### 3. *Confiscatory Burdens.*

■ Appellants assert that the ordinance imposes confiscatory burdens. However, this is for the trier of fact to resolve unless the regulation is confiscatory on its face. (Cf. *Birkenfeld* v. *City of Berkeley* (1976) 17 Cal.3d 129 [130 Cal.Rptr. 465, 550 P.2d 1001].)

Appellants contend that the trial court did not expressly find on the material issue of whether the ordinance has a confiscatory effect. The trial court determined in its conclusions of law, however, that "[t]he minimal costs associated [*sic*] the effectuation of the ordinance, such as the costs of marking or printing redeemable coupons, are not so burdensome as to render it invalid."[7]

■ The conclusion that the ordinance does not impose a confiscatory burden, appellants assert, is not supported by substantial evidence. However, the record contains evidence which is contrary to appellants' position: Retailers are experienced in handling returnable containers.[8] In addition, appellants presently participate in a federal food stamp program. Some evidence indicates that the procedure for issuing "change" to food stamp customers could be adopted as a workable coupon system for nonrefillables. Furthermore, the City of Berkeley has appropriated $20,000 for the purpose of informing consumers about the container program so as to help minimize the adverse impact the ordinance may have on retailers. An additional $25,000 has been appropriated by the city to subsidize a private pickup and recycle service for the nonrefillables returned to appellant stores. Finally, in a city-sponsored survey, 95 percent of those surveyed said they would continue to buy their soft drinks and beer in Berkeley after the ordinance was put in effect. This evidence substantially supports the conclusion that the ordinance does not impose a confiscatory burden on appellant stores.

### B. *Equal Protection.*

■ Appellants contend that the ordinance violates their right to equal protection of the laws because it applies only to soft drink and

---

[7]As we have noted, the distinction between findings of fact and conclusions of law is not significant here. (*Roloff* v. *Hundeby, supra,* 105 Cal.App. 645, 651.)

[8]The chairperson of the city council's advisory committee testified that 50 percent of all soft drinks presently sold in Berkeley are in refillables.

malt beverage containers but not to the containers of other beverages or food. However, "[i]t is no requirement of equal protection that all evils of the same genus be eradicated or none at all." (*Railway Express* v. *New York* (1949) 336 U.S. 106, 110 [93 L.Ed. 533, 539, 69 S.Ct. 463].) The legislative body may select one phase of a problem and apply a remedy there, neglecting for the moment other phases of the problem. (*Minnesota* v. *Clover Leaf Creamery Co.* (1981) 449 U.S. 456, [66 L.Ed.2d 659, 101 S.Ct. 715]; *Williamson* v. *Lee Optical* (1955) 348 U.S. 483, 489 [99 L.Ed. 563, 573, 75 S.Ct. 461]; see also *National Organization for Reform of Marijuana Laws* v. *Gain* (1979) 100 Cal.App.3d 586, 592 [161 Cal.Rptr. 181].)

As the court noted in *State of Minnesota* v. *Clover Leaf Creamery Co.*, "States are not required to convince the courts of the correctness of their legislative judgments. Rather, 'those challenging the legislative judgment must convince the court that the legislative facts on which the classification is apparently based could not reasonably be conceived to be true by the governmental decisionmaker.' [Citations.]

■ "Although parties challenging legislation under the Equal Protection Clause may introduce evidence supporting their claim that it is irrational, [citation], they cannot prevail so long as 'it is evident from all the considerations presented to [the legislature], and those of which we may take judicial notice, that the question is at least debatable.' [Citation.] Where there was evidence before the legislature reasonably supporting the classification, litigants may not procure invalidation of the legislation merely by tendering evidence in court that the legislature was mistaken." (*Clover Leaf, supra*, 449 U.S. 456, at p. 464 [66 L.Ed. 2d 659, at p. 669], fn. omitted.)

Judged by this standard, the record shows that respondents have failed to demonstrate the invalidity of the ordinance on equal protection grounds.

C. *Preemption by State Law.*

■ Appellants assert that retailer compliance with the ordinance is so burdensome that it inhibits and thus effectively regulates the sale of

soft drinks and beer. The ordinance is therefore preempted, appellants argue, by section 22, article XX of the California Constitution which reserves to the state the exclusive right to regulate the sale of alcoholic beverages. As stated in *Daniel* v. *Board of Police Commissioners* (1961) 190 Cal.App.2d 566, 571 [12 Cal.Rptr. 226], however, "[i]t does not appear that the Legislature intended that a person who is licensed to sell liquor should be immune from supervision, by local government, of any other activity the licensee might pursue in conjunction with the sale of liquor." The purpose of the ordinance is to regulate beverage containers; it does not purport to regulate the sale of alcoholic beverages. (See *Daniel* v. *Board of Police Commissioners, supra,* at p. 571; *Cristmat, Inc.* v. *County of Los Angeles* (1971) 15 Cal.App.3d 590, 594 [93 Cal.Rptr. 325].) The ordinance does not stand in the field occupied by article XX of the California Constitution.

▇▇▇ Rule 130 of the Department of Alcoholic Beverage Control (tit. 4, Cal. Admin. Code, ch. 1) provides that "labels or notices" on beer containers must be affixed to the containers before they reach the retailers. Appellants argue that this state law conflicts with the portion of the ordinance which provides for the marking of containers by retailers. Apparently, however, the rule pertains only to those "labels or notices" which carry certain information referred to elsewhere in the rule.[9] In any case, rule 130 is not aimed at container marking such as that provided by the ordinance any more than it is aimed at retail marking of beverage price.

*Conclusion*

▇▇▇ It is not our function nor within our province to sit as a super legislature passing upon the wisdom or lack thereof of legislative enactments. So long as the ordinance was within the power of the city council to enact and so long as the enactment does not offend constitutional rights, the ordinance is valid. We so hold. (*State of Minnesota* v. *Clover Leaf Creamery Co., supra,* 449 U.S. at pp. 470-474 [66 L.Ed.2d at pp. 673-675]

---

[9]Rule 130 refers to information pertaining to alcoholic content, the name and address of manufacturers and designations such as ale, porter, brown, stout, or malt liquor.

The judgment is affirmed.

Scott, Acting P. J., and Barry-Deal, J., concurred.

A petition for a rehearing was denied March 25, 1981, and appellants' petition for a hearing by the Supreme Court was denied April 22, 1981.

---

### APPENDIX
### ORDINANCE NO. 4830-N.S.

EVIDENCE

REGULATING THE SALE OF SOFT DRINKS AND MALT BEVERAGES IN NONREFILLABLE CONTAINERS AND REQUIRING A DEPOSIT THEREON.

BE IT ORDAINED by the Council of the City of Berkeley as follows:

WHEREAS, the City Council finds that developments in the packaging of consumer products have resulted in an increasing amount of solid waste, the disposal of which presents the City of Berkeley with serious financial, managerial and technical problems; and

WHEREAS, the City Council further finds that the sale of the hereinafter enumerated beverages in nonrefillable or disposable containers aggravates litter and solid waste collection and disposal and produces an adverse effect upon the environment which is injurious to the health, safety, comfort, convenience, welfare and happiness of the residents of the City of Berkeley; and

WHEREAS, the City Council further finds that the sale of the hereinafter enumerated beverages in reusable containers would significantly reduce the problems faced by the City of Berkeley in the management of its litter and solid waste collection and disposal program; and

WHEREAS, the City Council further finds that the deposit required by this ordinance will encourage the sale of the hereinafter enumerated beverages in refillable containers; and

WHEREAS, the City Council finds and determines that the regulation of solid waste disposal and management is a municipal affair and in the public interest.

NOW, THEREFORE, Be it Ordained as follows:

*Section 1.* DEFINITIONS.

For the purposes of this ordinance, the following terms shall be defined as follows:

a. "Soft Drink Beverage" shall mean mineral water, soda water, or other carbonated fruit flavored beverages, or any artificial mineral waters in liquid form commonly known as soft drinks intended for human consumption.

"Soft Drink Beverage" shall not include dairy products or fruit juices.

b. "Malt Beverage" shall mean beer, ale, or similar beverages with a malt base.

c. "City" shall mean all that territory within the corporate limits of the City of Berkeley.

d. "City Manager" shall mean the City Manager of the City of Berkeley or said Manager's designated representative.

e. "Container" shall mean any airtight sealed device made of glass, metal, plastic, or other materials which directly holds or contains soft drink or malt beverages. (*As amended by Ord. No. 4909-N.S., in effect 8/5/76.*)

f. "Sale" shall mean a commercial transaction by any person, firm, individual, corporation, partnership, or vendor, in which transaction beverages are sold directly to the public for a monetary consideration for the purpose of off-premise consumption. "Sale"

shall not include a transaction for the purpose of reselling. (*As amended by Ord. No. 4909-N.S., in effect 8/5/76.*)

g. "Vending Machine" shall mean any mechanical device which, upon insertion of coins, sells or dispenses soft drink beverages in containers. All vending machine sales will be considered to be for the purpose of off-premise consumption. (*As amended by Ord. No. 4909-N.S., in effect 8/5/76.*)

h. "Business Vendor" shall mean any person, firm, individual, corporation, partnership, association, joint venture, vendor, or any combination thereof, selling or offering for sale soft drink or malt beverages.

i. "Refillable Container" shall mean any container used for the sale of soft drink or malt beverages, and which container can be washed, sterilized and refilled for resale of such beverages, and for which the vendor receives at least Two Cents ($.02) for each such container from the vendor's distributor. (*As amended by Ord. No. 4909-N.S., in effect 8/5/76.*)

j. "Nonrefillable Container" shall mean any container used for the sale of soft drink or malt beverages other than a "Refillable Container" as defined hereinbefore.

k. "Distributor" shall mean any person, firm, business or corporation engaged in the distribution and supply of soft drink or malt beverages to vendors in the City of Berkeley.

*Section 2.* RETURN DEPOSIT REQUIRED.

a. Every soft drink and malt beverage container sold or offered for sale in the City of Berkeley shall have a refund value of not less than Five Cents ($.05), except that those refillable containers for which the vendor receives at least Two Cents ($.02) per container from the vendor's distributor may have a refund value of not less than Two Cents ($.02). (*As amended by Ord. No. 4909-N.S., in effect 8/5/76.*)

b. The refund value herein required shall be paid by the consumer at the time of purchase and shall be refunded by the vendor upon tender of such container to the vendor.

c. A vendor shall have the option of marking those nonrefillable containers sold by said vendor, or of issuing a coupon, voucher or chit with each nonrefillable container sold, or accepting any nonrefillable container and making the appropriate refund thereon.

(1) If a vendor marks nonrefillable containers as provided above, said vendor may refuse to accept or refund any amount on nonrefillable containers not so marked.

(2) If a vendor issues a coupon, voucher or chit as provided above with each nonrefillable container sold, he or she may refuse to accept or refund any amount on nonrefillable containers not accompanied by said coupon, voucher or chit.

(3) If a vendor does not mark nonrefillable containers of the kind, size and brand sold by said vendor, as provided above, such vendor shall not refuse to accept any empty nonrefillable container of the kind, size and brand sold by said vendor or refuse to refund the appropriate value thereon. (*As amended by Ord. No. 4921-N.S., in effect 8/26/76.*)

d. A vendor shall not refuse to accept from a consumer any empty refillable container of any kind, size and brand sold by the vendor or refuse to pay the consumer the refund value thereon of a refillable container.

*Section 3.* VENDING MACHINES.

a. Every soft drink beverage container sold or dispensed from vending machines in the City of Berkeley shall have a refund value of not less than Five Cents ($.05); provided, however, that this section shall become effective thirty-six (36) months after the date upon which this ordinance otherwise becomes effective.

b. The provisions of Section 2.b., c., and d. shall apply to vending machines upon the effective date of this section. (*As amended by Ord. No. 4909-N.S., in effect 8/5/76.*)

*Section 4.* INSPECTION.

The City Manager or the Manager's designated representative is authorized to enter the business premises of any business vendor engaged in the sale of soft drink or malt beverages in the City and which business vendor is licensed by the City to conduct a

business, for the sole purpose of inspecting said premises and determining whether the business vendor is in compliance with this ordinance.

*Section 5.* VIOLATIONS.

Any business vendor found in violation of any provision of this ordinance shall be guilty of a misdemeanor and shall be punished by a fine not exceeding Fifty Dollars ($50) or imprisonment not exceeding six (6) months, or both such fine and imprisonment. (*As amend. by Ord. 4831-N.S., in effect 12/11/75.*)

*Section 6.* SEVERABILITY.

The provisions of this ordinance are hereby declared to be severable and if any provision, sentence, clause, section, or part hereof is held illegal, invalid, unconstitutional, or inapplicable to any person or circumstance, such illegality, invalidity, unconstitutionality or inapplicability shall not affect or impair any of the remaining provisions, sentences, clauses, sections, or parts of this ordinance or their application to persons and circumstances.

*Section 7.* EFFECTIVE DATE.

This ordinance shall take effect on September 1, 1976. (*As amended by Ord. No. 4919-N.S., in effect 8/19/76.*)

*Section 8.* POSTING.

Copies of this Bill are hereby ordered published by posting with vote thereon for two (2) days at the ten (10) prominent places in the City of Berkeley as designated by Ordinance No. 2032-N.S.