[No. B024727. Second Dist., Div. One. June 4, 1987.]

CALIFORNIA RESTAURANT ASSOCIATION, Plaintiff and Appellant, v.
CITY OF LOS ANGELES et al., Defendants and Respondents.

COUNSEL

Lukens, St. Peter & Cooper, Lukens, Cooper, Perry & Drummond, M. Armon Cooper and Kathleen R. Tichenor for Plaintiff and Appellant.

Parker, Milliken, Clark, O'Hara & Samuelian, Stephen T. Holzer and Linda S. Klibanow as Amici Curiae on behalf of Plaintiff and Appellant.

James K. Hahn, City Attorney, Lewis N. Unger and Annette Keller, Assistant City Attorneys, for Defendants and Respondents.

## OPINION

**DEVICH, J.**—This appeal presents the question of whether the doctrine of preemption precludes the City of Los Angeles from enacting an ordinance that requires the posting of health warnings, wherever alcoholic beverages are sold, cautioning that drinking alcohol during pregnancy can cause birth defects. We hold that the doctrine of preemption does not apply and affirm the trial court's judgment rejecting a preemption challenge.

### FETAL ALCOHOL SYNDROME ORDINANCE

On June 11, 1986, Los Angeles Municipal Code section 46.80 was enacted unanimously by the city council as Ordinance No. 161361 (hereafter FAS Ordinance). The FAS Ordinance, which became effective July 19, 1986, contains the following recitals:

"WHEREAS, recent research indicates that alcohol consumption during pregnancy may cause irreversible adverse effects on the development of a

fetus, resulting in birth defects including mental retardation, facial abnormalities and other defects involving heart and bone structure; and

"WHEREAS, such adverse effects are known individually as Fetal Alcohol Effects and collectively as Fetal Alcohol Syndrome; and

"WHEREAS, a recent survey indicates that public awareness of Fetal Alcohol Effects and Fetal Alcohol Syndrome is still quite limited; and

"WHEREAS, the public should be informed that consumption of alcohol during pregnancy may be harmful to a fetus and may result in birth defects; . . ."

The FAS Ordinance requires any "person or entity who owns, operates, manages, leases or rents a premises offering for sale or dispensing . . . alcoholic beverages" to post at least one sign on such premises that "read[s] substantially as follows: WARNING. DRINKING WINE, BEER AND OTHER ALCOHOLIC BEVERAGES DURING PREGNANCY CAN CAUSE BIRTH DEFECTS." The sign must be at least "8 inches wide and 8 inches long" with lettering not "less than 1 inch in height." Violation of the FAS Ordinance constitutes a misdemeanor. (See L.A. Mun. Code, § 11.00, subd. (m).)

## PROCEDURAL HISTORY

The FAS Ordinance became effective on July 19, 1986. On September 9, 1986, the California Restaurant Association (hereafter CRA) filed a petition for writ of mandate pursuant to Code of Civil Procedure section 1085 against the City of Los Angeles and its chief of police (hereafter collectively City). CRA is a nonprofit California corporation representing restaurant owners throughout the state, approximately 800 of whom are licensed to sell alcoholic beverages in Los Angeles.

In its petition, CRA sought to enjoin enforcement of the FAS Ordinance on the ground that local regulation of the sale of alcoholic beverages is preempted by the State of California. The petition was denied by the trial court on November 4, 1986.

## CONTENTIONS

On appeal, CRA contends the FAS Ordinance is preempted by state law because it conflicts with the California Constitution and with a statutory scheme regulating signs at licensed premises. An amicus curiae brief on behalf of CRA has been filed by the Beer Institute, a national trade association for the United States brewing industry. The Beer Institute's brief gener-

ally supports CRA's contention that the FAS Ordinance conflicts with the California Constitution and asserts it also conflicts with state law regulating the promotion of temperance at licensed premises.

DISCUSSION

█ "It is settled that a local municipal ordinance is invalid if it attempts to impose additional requirements in a field that is preempted by general law. [Citations.] Local legislation in conflict with general law is void. Conflicts exist if the ordinance duplicates [citations], or enters an area fully occupied by general law, either expressly or by legislative implication [citations]. If the subject matter or field of the legislation has been fully occupied by the state, there is no room for supplementary or complementary local legislation, even if the subject were otherwise one properly characterized as a 'municipal affair.' [Citations]" (*Lancaster* v. *Municipal Court* (1972) 6 Cal.3d 805, 807-808 [100 Cal.Rptr. 609, 494 P.2d 681].)

California Constitution, article XI, section 5, provides that charter cities, such as Los Angeles, are competent to make and enforce ordinances regarding "municipal affairs." CRA and the Beer Institute do not contend that health warnings to pregnant women are an invalid exercise of local police power over a "municipal affair." Rather, it is asserted that, by requiring warnings to be posted where alcoholic beverages are sold, the FAS Ordinance enters an area "fully occupied" expressly by the California Constitution and impliedly by state law regulating posted signs and the promotion of temperance at licensed premises. For the reasons that follow, we disagree.

1.  Express Preemption

Article XX, section 22 of the California Constitution provides, in pertinent part: "The State of California . . . shall have the exclusive right and power to license and regulate the manufacture, sale, purchase, possession and transportation of alcoholic beverages in the State." The parties agree that the FAS Ordinance does not involve licensing authority nor regulation of the manufacture, possession or transportation of alcoholic beverages. Consequently, the operative issue is whether the FAS Ordinance constitutes a regulation of the *sale* or *purchase* of such beverages.

As there is no direct authority on this point, we turn for guidance to case law interpreting article XX, section 22 of the California Constitution:

In *Ainsworth* v. *Bryant* (1949) 34 Cal.2d 465 [211 P.2d 564], the Supreme Court considered a challenge to a municipal ordinance imposing an excise

tax on the retail purchase, use or other consumption of tangible personal property. In holding article XX, section 22, did not invalidate the tax insofar as it included retail transactions involving alcoholic beverages, the court observed that "the constitutional provision vests in the state the 'exclusive right and power to ... regulate' the 'sale' and 'purchase' of intoxicating liquor, but such reservation of authority contemplates a control exercised in the sense of such regulatory measures as 'restrictions as to the class of persons to whom liquors may be sold, and as to the hours of the day and the days of the week during which places of sale may be open.' [Citation.]" (*Id.,* at p. 476.)

Municipalities have often enacted ordinances prohibiting a liquor licensee from engaging in sales if certain entertainment exists on the premises. In *Daniel* v. *Board of Police Commissioners* (1961) 190 Cal.App.2d 566 [12 Cal.Rptr. 226] (disapproved on other grounds in *Burton* v. *Municipal Court* (1968) 68 Cal.2d 684, 693 [68 Cal.Rptr. 721, 441 P.2d 281]), the court upheld a municipal ordinance requiring a permit to be obtained from the board of police commissioners as a prerequisite to offering live entertainment in an establishment where food or beverages are sold. In *Crownover* v. *Musick* (1973) 9 Cal.3d 405 [107 Cal.Rptr. 681, 509 P.2d 497] (disapproved on other grounds in *Morris* v. *Municipal Court* (1982) 32 Cal.3d 553, 564-565 [186 Cal.Rptr. 494, 652 P.2d 51]), the Supreme Court determined that ordinances enacted by various municipalities prohibiting topless or nude entertainers and food service personnel in establishments that serve alcoholic beverages did not run afoul of article XX, section 22. (See also *Cristmat, Inc.* v. *County of Los Angeles* (1971) 15 Cal.App.3d 590 [93 Cal.Rptr. 325] [upholding a municipal ordinance prohibiting the licensee of a "model studio" from allowing patrons to possess, consume, or be under the influence of an alcoholic beverage].)

More recently, a municipal ordinance requiring retailers of malt beverages and soft drinks to collect a deposit on all containers was challenged as having been preempted by article XX, section 22. The preemption argument was rejected because "[t]he purpose of the ordinance is to regulate beverage containers; it does not purport to regulate the sale of alcoholic beverages. [Citations.]" (*Park & Shop Markets, Inc.* v. *City of Berkeley* (1981) 116 Cal.App.3d 78, 93 [172 Cal.Rptr. 515].)

The cases discussed above contain diverse elements which arguably distinguish them from the instant situation. For example, in *Ainsworth* v. *Bryant, supra,* 34 Cal.2d 465, and *Park & Shop Markets, Inc.* v. *City of Berkeley, supra,* 116 Cal.App.3d 78, tangible items other than alcoholic beverages were being regulated in conjunction with alcoholic beverages. In *Daniel* v. *Board of Police Commissioners, supra,* 190 Cal.App.2d 566, and *Crownover* v.

*Musick, supra,* 9 Cal.3d 405, the liquor licensees had the option of avoiding restrictions on their operations by simply foregoing the presentation of certain types of entertainment.

■ However, a common thread that runs throughout these cases is that article XX, section 22, will not be held to preempt a local ordinance where, as here, the ordinance does not directly affect the licensee's ability to sell alcoholic beverages to a willing purchaser. The FAS Ordinance does not regulate the *sale* or *purchase* of an alcoholic beverage, but rather seeks to avert tragedy by warning that drinking alcohol during pregnancy can cause birth defects. Accordingly, the FAS Ordinance is not expressly preempted by California Constitution, article XX, section 22.[1]

## 2. Preemption by Implication

CRA contends that even if the FAS Ordinance is not expressly barred by article XX, section 22, it is nonetheless void because state law regulating advertising signs has preempted the entire field of signs inside licensed premises, regardless of their content. The Beer Institute makes a similar claim based on state law relating to the promotion of temperance.

■ "To determine whether the Legislature intended to occupy a particular field to the exclusion of all local regulation, we may look to the ' "whole purpose and scope of the legislative scheme." ' [Citation.] [¶] *In re Hubbard* [1964] 62 Cal.2d 119, 128 [41 Cal.Rptr. 393, 396 P.2d 809], established three tests to determine whether a subject has been preempted by the Legislature. '(1) the subject matter has been so fully and completely covered by general law as to clearly indicate that it has become exclusively a matter of state concern; (2) the subject matter has been partially covered by general law couched in such terms as to indicate clearly that a paramount state concern will not tolerate further or additional local action; or (3) the subject matter has been partially covered by general law, and the subject is of such a nature

---

[1]CRA also asserts that express preemption is supported by *Premier-Pabst Sales Co.* v. *State Board of Equalization* (S.D.Cal. 1935) 13 F.Supp. 90. In *Premier-Pabst,* a three-judge court upheld the constitutionality of the then newly enacted Alcoholic Beverage Control Act against an argument that provisions regulating the size of advertising signs and requiring the removal of oversize signs violated due process. The court held: "Advertising is one of the incidents in the sale of liquors. If the state, under its police power, can prohibit the whole business [of the sale of liquor] from being carried on, it can prohibit and control any of its incidents." (*Id.,* at pp. 95-96.) CRA now argues, without citation of authority, that the warning sign required by the FAS Ordinance is "in substance a negative advertisement" and therefore an incident of sale within the purview of article XX, section 22. We reject this unfounded attempt to bootstrap the FAS Ordinance into the realm of advertising and sale. Moreover, the ability of the state to require warnings such as those in the FAS Ordinance, or even warnings of a greater scope, does not establish that the authority to require such warnings is vested *solely* in the state.

that the adverse effect of a local ordinance on the transient citizens of the state outweighs the possible benefit to the municipality.' " (*Galvan* v. *Superior Court* (1969) 70 Cal.2d 851, 859-860 [76 Cal.Rptr. 642, 452 P.2d 930].)

    a.  *Signs*

    ■  The statutes CRA claims preempt the FAS Ordinance are Business and Professions Code sections 25611.1 and 25612.[2] These statutes, which are unrelated to health warnings, generally permit the producers of alcoholic beverages to provide advertising signs which do not exceed a certain size for use in premises where such beverages are sold, and prohibit licensees from use of any advertising matter which is "obnoxious, gaudy, blatant, or offensive . . . ."

    The subject matter of the FAS Ordinance is to provide a *health warning* to pregnant women. The fact that this warning comes in the form of a posted sign does not logically bring it within the scope of a statutory scheme that regulates advertising in general.

    A similar preemption argument was rejected in *Park & Shop Markets, Inc.* v. *City of Berkeley, supra,* 116 Cal.App.3d 78. There, the court considered the relationship between a state requirement that "labels or notices" be affixed on beer containers before they reach the retailer and a municipal ordinance which required the retailer to mark the containers with a notice

---

[2]Business and Professions Code section 25611.1 provides: "Any manufacturer, winegrower, manufacturer's agent, rectifier, distiller, bottler, importer, or wholesaler, or any officer, director, or agent of any such person, may furnish, give, lend or rent:

"(a) Signs relating to wine or distilled spirits, each of which shall not exceed 630 square inches, for interior use in premises where alcoholic beverages are sold for consumption on the premises.

"(b) Except as limited in subdivision (a) of this section, signs for interior use in premises where alcoholic beverages are sold for consumption on or off the premises. Signs relating to malt beverage advertising the beer manufacturer's product principally bearing a conspicuous notice of the manufacturer's name, brand name, trade name, slogans, markings, trademarks, or other symbols commonly associated with and generally used by the manufacturer in identifying the manufacturer's name or product, with or without other graphic or pictorial advertising representations, whether or not illuminated or mechanized, including but not limited to posters, placards, stickers, decals, shelf strips, wall panels, plaques, shadow boxes, mobiles, dummy bottles, bottle toppers, case wrappers, brand-identifying statuettes, tap markers and table tents. Such signs for interior use on licensed premises selling malt beverages shall not be deemed of intrinsic or utilitarian value.

"(c) Such signs or other advertising matter for exterior use on any licensed premises as may be permitted by this division and rules of the department adopted pursuant thereto."

Business and Professions Code section 25612 provides: "Signs or other advertising matter used in connection with the licensed premises of any retailer of alcoholic beverages shall not be of any obnoxious, gaudy, blatant, or offensive nature and shall in no manner contrary to the rules of the department obstruct the view of the interior of the premises from the street."

regarding a deposit for its return. The court held that the state requirement was not aimed at container markings such as those provided by the ordinance and the preemption doctrine did not apply. (*Id.,* at p. 93.)

Since state regulation of advertising is not aimed at a health warning such as the one embodied in the FAS Ordinance, it is manifest that under the tripartite test for preemption set forth in *Galvan* and *Hubbard* (1) the subject matter has not been fully covered by state law or (2) partially covered by state law couched in terms to indicate that local regulation will not be tolerated. (*Galvan* v. *Superior Court, supra,* 70 Cal.2d at pp. 859-860.) It is equally apparent that (3) the FAS Ordinance has no potentially adverse effect that could not be outweighed by a municipal interest. (*Ibid.*)

b.  *Promotion of Temperance*

■  The Beer Institute characterizes the purpose of the FAS Ordinance as seeking to promote temperance and argues that "promotion of temperance at the point-of-sale of alcoholic beverages is completely preempted by the State." In support of this assertion, the Beer Institute relies on the language in Business and Professions Code section 23001 that one of the general purposes of the Alcoholic Beverage Control Act (Bus. & Prof. Code, § 23000 et seq.) is to "promote temperance" with respect to alcoholic beverages,[3] and on statutes that prohibit furnishing alcoholic beverages to persons who are habitual or common drunkards (Bus. & Prof. Code, § 25602, subd. (a); Pen. Code, § 397), legally incompetent or insane (Pen. Code, § 397), or under the age of 21 (Bus. & Prof. Code, § 25658, subd. (a)).[4] This argument is seriously flawed.

---

[3]Business and Professions Code section 23001 provides: "This division is an exercise of the police powers of the State for the protection of the safety, welfare, health, peace, and morals of the people of the State, to eliminate the evils of unlicensed and unlawful manufacture, selling, and disposing of alcoholic beverages, and to promote temperance in the use and consumption of alcoholic beverages. It is hereby declared that the subject matter of this division involves in the highest degree the economic, social, and moral well-being and the safety of the State and of all its people. All provisions of this division shall be liberally construed for the accomplishment of these purposes."

[4]Business and Professions Code section 25602, subdivision (a), provides: "Every person who sells, furnishes, gives, or causes to be sold, furnished, or given away, any alcoholic beverage to any habitual or common drunkard or to any obviously intoxicated person is guilty of a misdemeanor."

Penal Code section 397 provides: "Every person who sells or furnishes, or causes to be sold or furnished, intoxicating liquors to any habitual or common drunkard, or to any person who has been adjudged legally incompetent or insane by any court of this State and has not been restored to legal capacity, knowing such person to have been so adjudged, is guilty of a misdemeanor."

Business and Professions Code section 25658, subdivision (a), provides: "Every person who sells, furnishes, gives, or causes to be sold, furnished, or given away, any alcoholic beverage to any person under the age of 21 years is guilty of a misdemeanor."

To the extent they promote temperance, the statutes on which the Beer Institute relies contain no limitation as to the "point-of-sale" of alcoholic beverages. Rather, they prohibit "[e]very person," whether or not a liquor licensee, from selling or furnishing alcoholic beverages to drunkards, incompetent persons, and minors, regardless of the location at which the beverages are furnished or sold. (See generally *Sagadin* v. *Ripper* (1985) 175 Cal.App.3d 1141, 1157-1158 [221 Cal.Rptr. 675].)

Moreover, the statutes are clearly intended to prevent consumption of alcoholic beverages by those who, as a matter of law, lack the capacity to make an intelligent, socially responsible decision about whether or not to drink. In contrast, the FAS Ordinance does not prohibit the sale or consumption of alcoholic beverages. It merely warns a specific group of potential consumers that a decision to consume an alcoholic beverage has potentially dire consequences.

We find "promotion of temperance at the point-of-sale of alcoholic beverages" does not constitute subject matter that has been completely covered by state law. To the extent it has been partially covered, the FAS Ordinance is nonetheless an appropriate subject for local ordinance. (See *Galvan* v. *Superior Court, supra,* 70 Cal.2d at pp. 859-860.)

DISPOSITION

The judgment is affirmed.

Spencer, P. J., and Lucas, J., concurred.

Appellant's petition for review by the Supreme Court was denied August 20, 1987. Mosk, J., was of the opinion that the petition should be granted.