Opinion
 

 KING, J.
 

 I. Introduction
 

 In this case we hold that a county may adopt an ordinance prohibiting discrimination against those who undergo health testing which discloses an infectious disease, for the public health purpose of encouraging citizens to be tested without fear of discrimination in order to learn of the presence of the disease and prevent its transmission, even though the state has preempted the field of protecting civil rights by prohibiting some of the same discriminatory practices.
 

 This taxpayer’s suit challenges a county ordinance which prohibits discriminatory practices against persons who have conditions associated with
 
 *899
 
 human immunodeficiency vims (HIV), including acquired immune deficiency syndrome (AIDS). The ordinance was adopted for the public health purpose of encouraging people to consent to HIV testing by removing the barrier to such testing presented by the fear of discrimination if the test result were positive. The issue is whether portions of the ordinance are preempted by the antidiscrimination provisions of the California Fair Employment and Housing Act (FEHA) (Gov. Code, 12900 et seq.). We conclude that no part of the ordinance is preempted, because its underlying public health purpose removes it from the field of civil rights protection occupied by FEHA.
 

 II. Background
 

 The challenged ordinance was drafted by the Contra Costa County Health Services Department and the Contra Costa County AIDS Taskforce as a component of their campaign to help control the spread of HIV. At a meeting of the board of supervisors on May 9, 1989, several county public health officers informed the board that the ordinance was necessary for the following public health reason: the cornerstone of the present public health response to the AIDS epidemic is testing for HIV antibodies; high-risk individuals are reluctant to be tested because of their fear that if the test result is positive, it will form a basis for discrimination; and the ordinance would increase the success of the public health offense against HIV by encouraging people to consent to testing. The focus of the individual board members’ remarks at the May 9 meeting was on public health; each supervisor either commented on the strong urging of the medical profession to adopt the ordinance or specifically stated that the issue was one of public health. The board adopted the ordinance on June 6, 1989. (Contra Costa County Ord. Code, § 460-2:002 et seq.) It applies only in unincorporated areas of Contra Costa County.
 

 The ordinance is very broad in scope. It protects not only persons with AIDS or AIDS-related conditions (ARC), but also anyone who has HIV antibodies, may be perceived as having AIDS or associated conditions, is believed to be at risk of contracting such a condition, or is believed to associate with persons who have AIDS. It prohibits various types of discriminatory practices in employment, housing, business establishments, and county facilities and services. Violators are subject to civil liability of at least $1,000 and as much as three times the amount of actual damages other than pain and suffering, as well as injunctive relief. Aggrieved persons may enforce the ordinance by filing a civil action or by requesting the Contra Costa County Human Relations Commission to investigate and mediate their complaints.
 

 
 *900
 
 Shortly after the ordinance was passed, Citizens For Uniform Laws (CFUL) and Francis X. Driscoll filed the present action for injunctive and declaratory relief, claiming the employment and housing portions of the ordinance are preempted by FEHA. The complaint identified CFUL as a “nonprofit social welfare corporation” which has as its purpose the protection of citizens from preempted local laws. The only person who has identified himself as a member of CFUL is a general contractor named Richard Brooks. (Brooks identified three other members, one of whom is CFUL’s attorney). The complaint identified Driscoll as a county taxpayer.
 

 The trial court granted summary judgment for the county, concluding that CFUL and Driscoll had standing to sue but the ordinance was “a valid local public health and safety regulation not preempted by state law.”
 

 III. Discussion
 

 A.
 
 Standing.
 

 The threshold issue is whether CFUL or Driscoll has standing to sue. The county contends they do not. This issue is cognizable, despite the county’s failure to cross-appeal, for the purpose of determining whether the denial of relief should be affirmed on a legal theory other than lack of preemption. (Code Civ. Proc., § 906;
 
 Central Manufacturing District, Inc.
 
 v.
 
 Board of Supervisors
 
 (1960) 176 Cal.App.2d 850, 857 [1 Cal.Rptr. 733]; see also
 
 Common Cause
 
 v.
 
 Board of Supervisors
 
 (1989) 49 Cal.3d 432, 438 [261 Cal.Rptr. 574,
 
 777
 
 P.2d 610] [claim of no standing involves jurisdictional challenge and may be raised at any time].)
 

 CFUL claims standing through assertion of the rights of its avowed member, Richard Brooks, who CFUL claims is an employer within the scope of the ordinance’s employment discrimination provisions. The trial court expressly found that Brooks was an employer and thus CFUL had standing. This finding, however, is unsupportable in light of Brooks’s deposition testimony that he has no employees but merely uses subcontractors. A subcontractor is not an employee in any legal sense of the word.
 

 Regardless of CFUL’s lack of standing, Driscoll has standing as a taxpayer seeking to prevent a purportedly illegal expenditure of public funds. (Code Civ. Proc., § 526a.) The county claims there is no taxpayer standing because the only public entity implicated in the enforcement of the ordinance, the Contra Costa County Human Relations Commission, was already in existence and was not augmented in any way as a result of the ordinance, so that there has been no additional expenditure of public funds. But taxpayer
 
 *901
 
 standing does not require an additional expenditure of funds. It is sufficient that paid employees of a preexisting public entity have expended their time in performing acts prescribed by the challenged law.
 
 (Blair
 
 v.
 
 Pitchess
 
 (1971) 5 Cal.3d 258, 268-269 [96 Cal.Rptr. 42, 486 P.2d 1242, 45 A.R.L.3d 1206];
 
 Wirin
 
 v.
 
 Horrall
 
 (1948) 85 Cal.App.2d 497, 504-505 [193 P.2d 470].) This approach is consistent with the policy of construing the taxpayer standing rule liberally to achieve the remedial purpose of enabling citizens to attack governmental action which would otherwise go unchallenged because of standing requirements.
 
 (Blair
 
 v.
 
 Pitchess, supra,
 
 5 Cal.3d at pp. 267-268.) The Contra Costa County Human Relations Commission has received at least one complaint under the ordinance (though the commission initiated no investigation). Even the small expenditure of county time necessary to review that complaint is sufficient to confer taxpayer standing.
 
 (Id.
 
 at p. 268.)
 

 As Driscoll has standing to sue, the preemption issue is properly before us.
 

 B.
 
 Preemption.
 

 We note at the outset that if there were any preemption, it would not be completely fatal to the challenged ordinance, which contains a severability clause. FEHA applies only to discrimination in employment and housing, while the ordinance casts a much broader net, covering various practices in business establishments and county facilities and services. Moreover, while FEHA forbids employment discrimination based on physical handicap (Gov. Code, § 12940), which has been held to include AIDS
 
 (Raytheon Co.
 
 v.
 
 Fair Employment & Housing Com.
 
 (1989) 212 Cal.App.3d 1242, 1248-1250 [261 Cal.Rptr. 197]), FEHA does not forbid housing discrimination based on physical handicap. (Gov. Code, § 12955.) Thus, the portions of the ordinance forbidding discrimination in business establishments and county facilities and services are clearly not preempted by FEHA, and it is further arguable that FEHA does not occupy the field of housing discrimination based on physical handicap. Indeed, the extent of overlap between FEHA and the ordinance is only marginal, since FEHA merely forbids employment discrimination against persons who are physically handicapped due to AIDS, while the ordinance applies to discrimination in other fields and protects persons in situations that fall short of physical handicap.
 

 FEHA addresses the question of preemption in Government Code section 12993, subdivision (c), which states: “While it is the intention of the Legislature to occupy the field of regulation of discrimination in employment and
 
 *902
 
 housing encompassed by the provisions of this part, exclusive of all other laws banning discrimination in employment and housing by any city, city and county, county, or other political subdivision of the state, nothing contained in this part shall be construed, in any manner or way, to limit or restrict the application of Section 51 of the Civil Code.” This statement indicates legislative intent to preempt local but not state law.
 
 (Rojo
 
 v.
 
 Kliger
 
 (1990) 52 Cal.3d 65, 76-78 [276 Cal.Rptr. 130, 801 P.2d 373.)
 

 The mere conclusion that the Legislature intended to occupy the field of regulating employment and housing discrimination does not, however, resolve the question whether the challenged ordinance is preempted. The pivotal issue is whether the ordinance occupies the same “field” or “subject matter” as that regulated by FEHA. If not, there is no preemption. (See
 
 California Water & Telephone Co.
 
 v.
 
 County of Los Angeles
 
 (1967) 253 Cal.App.2d 16, 27-28 [61 Cal.Rptr. 618].)
 

 For example, in
 
 California Restaurant Assn.
 
 v.
 
 City of Los Angeles
 
 (1987) 192 Cal.App.3d 405, 412-413 [237 Cal.Rptr. 415], an ordinance required sellers of alcoholic beverages to post a sign warning that drinking alcohol during pregnancy can cause birth defects. The court held the ordinance was not preempted by state legislation regulating the use of advertising signs on premises where alcoholic beverages are sold, because the “subject matter” of the ordinance was the provision of a health warning to pregnant women, while the state legislation was unrelated to health warnings. There was no preemption, because “state regulation of advertising is not aimed at a health warning such as the one embodied in the” ordinance.
 
 (Id.
 
 at p. 413.)
 

 Similarly, in
 
 Park & Shop Markets, Inc.
 
 v.
 
 City of Berkeley
 
 (1981) 116 Cal.App.3d 78, 92-93 [172 Cal.Rptr. 515], an ordinance requiring a five-cent deposit on beer and soft-drink containers was held unpreempted by a constitutional provision reserving to the state the exclusive right to regulate the sale of alcoholic beverages, because the ordinance did not “stand in the field occupied by” the constitutional provision.
 
 (Id.
 
 at p. 93.) “The purpose of the ordinance is to regulate beverage containers; it does not purport to regulate the sale of alcoholic beverages.” (Ibid.; see also
 
 Alioto’s Fish Co.
 
 v.
 
 Human Rights Com. of San Francisco
 
 (1981) 120 Cal.App.3d 594, 605 [174 Cal.Rptr. 763] [no FEHA preemption where local government did not ban employment discrimination but merely exercised contracting power by prescribing nondiscrimination provisions in city contracts].)
 

 A similar result obtains here. The purpose of FEHA is to protect civil rights. (Gov. Code, §§ 12920, 12921.) In contrast, the challenged ordinance
 
 *903
 
 was proposed, debated and adopted as public health legislation, the purpose of which is to combat the AIDS epidemic by promoting HIV testing. The county, as a public health provider, has a financial as well as a public policy interest in limiting the spread of this disease. The mere fact that the two sets of legislation employ similar regulatory tools (i.e., proscriptions against certain types of discrimination) does not mean they occupy the same field. As in
 
 California Restaurant Assn.
 
 v.
 
 City of Los Angeles, supra,
 
 192 Cal.Rptr. 405, the ordinance’s public health purpose removes it from the field occupied by the state legislation. We therefore conclude that no part of the ordinance is preempted by FEHA.
 

 In 1980, when FEHA was amalgamated from two earlier acts (see
 
 Rojo
 
 v.
 
 Kliger, supra,
 
 52 Cal.3d at p. 72), the AIDS epidemic was in its infancy, the virus still undiscovered. Obviously, the Legislature was not thinking about the promotion of HIV testing or halting the spread of AIDS. In the 11 years since then, AIDS has reached crisis proportions, calling for an extraordinary public health response. To indulge the fiction that the Legislature -in 1980 intended to preempt regulation on a subject virtually unknown at the time would hamstring that response, with potentially tragic consequences. Unless and until the Legislature takes steps clearly intended to occupy the field, local government should remain free to take appropriate action, guided by medical and public health professionals, to help combat this deadly disease.
 

 IV. Disposition
 

 The judgment is affirmed.
 

 Low, P. J., and Haning, J., concurred.
 

 Appellants’ petition for review by the Supreme Court was denied December 12, 1991. Panelli, J., was of the opinion that the petition should be granted.