Filed 4/11/18

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION TWO

| | |
|---|---|
| CITY AND COUNTY OF SAN FRANCISCO et al.<br><br>　　　Plaintiffs and Respondents,<br><br>v.<br><br>CHUCK M. POST et al.<br><br>　　　Defendants and Appellants. | A149136<br><br>(San Francisco City and County Super. Ct. No. CGC-15-548551) |

　　　In 1998 the San Francisco Board of Supervisors outlawed discrimination against tenants who pay a portion of their rent with a Section 8, or similar, housing voucher. They did this by amending San Francisco's existing housing discrimination ordinance to outlaw discrimination based on a person's "source of income," a term they defined broadly to include government rent subsidies. (S.F. Police Code, § 3304, subd. (a).) The following year, the California Legislature also expanded the state's Fair Employment and Housing Act (FEHA) to prohibit discrimination based on a tenant's "source of income," but the Legislature defined the term narrowly, so that it does *not* reach government rent subsidies such as Section 8. (Gov. Code, § 12955, subd. (a).) FEHA does not prevent a landlord from declining to take Section 8 tenants. (*Sabi v. Sterling* (2010) 183 Cal.App.4th 916 (*Sabi*).) The question this case poses is whether FEHA preempts San Francisco's ordinance to the extent the local ordinance outlaws discrimination based on a tenant's participation in the Section 8 program. The trial court found no preemption, and we agree.

## FACTUAL AND PROCEDURAL BACKGROUND

The material facts in this case are uncontroverted. Acting as agent for Appellant Lem-Ray Properties I DE, LLC (Lem-Ray), Appellant Chuck Post sought tenants for efficiency studio apartments at 935 Geary Street in San Francisco. Between May 2013 and May 2014, he posted advertisements on Craigslist and ApartmentsInSF.com advertising these units, each advertisement stating that the landlord would not accept Section 8 vouchers.

On October 21, 2015, the City and County of San Francisco and the People of the State of California acting by and through San Francisco City Attorney Dennis J. Herrera (collectively, the People) filed this case. Their complaint alleges that Post and Lem-Ray's actions violated San Francisco Police Code section 3304 (section 3304), the ordinance that forbids discrimination based on source of income. Piggy-backing on these allegations of unlawful conduct, the complaint alleges violation of California Business and Professions Code section 17200 and of a prior injunction prohibiting Lem-Ray from employing unfair business practices. Post and Lem-Ray demurred on the ground that FEHA preempts the source-of-income provision in section 3304, but the trial court overruled the demurrer.

The People then moved for a preliminary injunction to prevent appellants from continuing to discriminate against participants in the Section 8 program. On May 20, 2016, the trial court granted the injunction, finding that the People were likely to succeed on the merits of their claims under section 3304, and that a preliminary injunction was necessary to prevent irreparable harm while the case was pending. This timely appeal followed.

## LEGAL BACKGROUND

### The Section 8 Program

The Housing Choice Voucher program, commonly known as "Section 8," is a partnership between the federal government and state or local public housing authorities (PHAs). The federal government funds the program, and the PHA administers it. (*Sabi*, *supra*, 183 Cal.App.4th at p. 925; 24 C.F.R. § 982.1.) The program subsidizes eligible

low-income renters in paying for housing in the private rental market. The PHA identifies low-income renters who are eligible to participate in the program, approves the housing they wish to rent, and then enters into a contract with the landlord to pay directly to the landlord a portion of the tenant's rent each month. (*Ibid.*)

Certain elements of the Section 8 program vary in response to "local housing needs and priorities." (24 C.F.R. § 982.207.) For example, the PHA sets income requirements for program participation based on the cost of living in a local community, and varies the size of rent subsidies according to local market rents. (24 C.F.R. §§ 982.201, 982.503.) Here, the PHA is the San Francisco Housing Authority. Analyzing data from 1997, the San Francisco Housing Authority reported in 1988 that because so little housing stock was available to Section 8 tenants in San Francisco, a third of the households receiving Section 8 vouchers for the first time left San Francisco to find housing in other communities.

### San Francisco's Ordinance

When San Francisco faced a shortage of low-income housing and widespread displacement of Section 8 tenants in 1998, the San Francisco Board of Supervisors responded by passing a package of three measures. First, they amended an existing ordinance outlawing housing discrimination to add a person's "source of income" as a protected category, defining "source of income" to include Section 8 and other public or nonprofit rent subsidies so that landlords could not refuse to accept tenants relying on Section 8 subsidies. (S.F. Police Code, § 3304, subd. (a).) Second, they added a requirement to the ordinance that any landlord using "a financial or income standard" to determine whether a tenant qualified for a rental contract must account, in its calculation, for (a) any portions of the rental payment that would be made by others, such as the PHA, and (b) the combined income of all persons proposing to reside together or cosign the lease. (S.F. Police Code, § 3304, subd. (b).) This measure prevents landlords from turning away low-income tenants who could make the rent with the assistance they receive from others. Third, the Board of Supervisors brought units occupied by Section 8

3

tenants under the umbrella of the city's rent ordinance, limiting a landlord's ability to evict such tenants and raise rents.  (See S.F. Admin. Code, §§ 37.2, 37.3, 37.9.)

Today, San Francisco's housing discrimination ordinance, section 3304, continues to prevent landlords from discriminating on the basis of a tenant's "source of income." Section 3304 broadly defines the term to mean "all lawful sources of income *or* rental assistance from any federal, State, local, or nonprofit-administered benefit or subsidy program."  (S.F. Police Code, § 3304, subd. (a)(5), italics added.)  Relevant portions of the ordinance are set forth more completely in the margin, with language added in 1998 in italics.[1]

---

[1] Section 3304 reads:

"(a)  **Prohibited Activity.**  It shall be unlawful for any person to do any of the following acts wholly or partially because of a person's actual or perceived race, color, ancestry, national origin, place of birth, sex, age, religion, creed, disability, sexual orientation, gender identity, *source of income*, weight, or height:

"(1)  To interrupt, terminate, or fail or refuse to initiate or conduct any transaction in real property, including but not limited to the rental thereof; to require different terms for such transaction; or falsely to represent that an interest in real property is not available for transaction; [¶] . . . [¶]

"(5)  To make, print, publish, advertise or disseminate in any way, or cause to be made, printed or published, advertised or disseminated in any way, any notice, statement or advertisement with respect to a transaction or proposed transaction in real property, . . . which unlawfully indicates preference, limitation or discrimination based on race, color, ancestry, national origin, place of birth, sex, age, religion, creed, disability, sexual orientation, gender identity, *source of income*, weight, or height.  *For purposes of this Subsection (a), 'source of income' means all lawful sources of income or rental assistance from any federal, State, local, or nonprofit-administered benefit or subsidy program.  'Source of income' also means a rental assistance program, homeless assistance program, security deposit assistance program or housing subsidy program. "Source of income" includes any requirement of any such program or source of income, or rental assistance.*

"*(b)  **Prohibited Economic Discrimination.**  It shall be unlawful for any person to use a financial or income standard for the rental of housing that does either of the following:*

4

*FEHA*

FEHA is a 1980 recodification of the state's pre-existing fair employment and fair housing acts. (*Rojo v. Kliger* (1990) 52 Cal.3d 65, 72 (*Rojo*).) FEHA declares that the opportunity to obtain and retain employment and housing without discrimination based on race, religion, or other protected attributes is "a civil right," and the purpose of the statute is "to provide effective remedies that will eliminate" these discriminatory practices. (Gov. Code, §§ 12920, 12921.) To that end, the statute establishes enforcement procedures. With regard to acts of housing discrimination that the statute identifies as unlawful, aggrieved individuals may file complaints with the Department of Fair Employment and Housing, or the director of the Department or the Attorney General may file a complaint. (Gov. Code, § 12925, subd. (b), § 12980, subds. (a), (b).) The statute sets out details on the timeline and procedures the department must follow in investigating and resolving these complaints, including a provision that if the department elects not to proceed with a case it must provide a right-to-sue notice to the claimant. (Gov. Code, § 12980, subds. (c)-(j).)

Until 1999, FEHA was silent on source-of-income discrimination. When San Francisco amended section 3304 in 1998 to include discrimination based on source of income, broadly defined, FEHA made no mention of income in the list of personal attributes for which it was unlawful to discriminate. But the following year, the Legislature amended the statute to add source-of-income discrimination. FEHA now declares it to be unlawful "[f]or the owner of any housing accommodation to discriminate against or harass any person because of the race, color, religion, sex, gender, gender

---

"*(1) Fails to account for any rental payments or portions of rental payments that will be made by other individuals or organizations on the same basis as rental payments to be made directly by the tenant or prospective tenant;*

"*(2) Fails to account for the aggregate income of persons residing together or proposing to reside together, or aggregate income of tenants or prospective tenants and their cosigners or proposed cosigners, on the same basis as the aggregate income of married persons residing together or proposing to reside together.*" (§ 3304, italics added.)

identity, gender expression, sexual orientation, marital status, national origin, ancestry, familial status, *source of income*, disability, or genetic information of that person. (Gov. Code, § 12955, subd. (a), italics indicating language added by Stats. 1999 (S.B. No. 1098).) The 1999 FEHA amendment defined "source of income" more narrowly than does San Francisco's ordinance. In FEHA, the term means "lawful, verifiable income paid directly to a tenant or paid to a representative of a tenant," where "a landlord is not considered a representative of a tenant." (Gov. Code, § 12955, subd. (p)(1).)

This definition means that Section 8 subsidies, because they are paid directly to the landlord, do not count as a tenant's income for purposes of FEHA's source-of-income provision. (*Sabi*, *supra*, 183 Cal.App.4th at p. 934.) Nothing in FEHA prevents a landlord from opting out of the Section 8 program, but FEHA is not altogether silent on the subject of government rent subsidies. Another provision added to FEHA in 1999 makes it unlawful, "[i]n instances where there is a government rent subsidy, to use a financial or income standard in assessing eligibility for the rental of housing that is not based on the portion of the rent to be paid by the tenant." (Gov. Code, § 12955, subd. (o).) In other words, state law requires a landlord evaluating a potential tenant's ability to pay rent to consider only whether the tenant can pay the portion of the market rent for which the tenant will personally be responsible, rather than artificially including the portion of the rent that the government will pay on the tenant's behalf. This provision protects Section 8 program participants from having their finances unfairly assessed, but does not prevent a landlord from discriminating against or excluding Section 8 tenants simply because the landlord prefers not to participate in the program.

Of central importance to this case, FEHA has a provision that expressly addresses preemption of local ordinances. It states:

"While it is the intention of the Legislature to occupy the field of regulation of discrimination in employment and housing encompassed by the provisions of this part, exclusive of all other laws banning discrimination in employment and housing by any city, city and county, county, or other political subdivision of the state, nothing contained

6

in this part shall be construed, in any manner or way, to limit or restrict the application of Section 51 of the Civil Code." (Gov. Code, § 12993, subd. (c).)

## DISCUSSION

An order granting a preliminary injunction may be appealed. (Code Civ. Proc., § 904.2, subd. (g).) Ordinarily we review such orders for an abuse of discretion, but where, as here, the issue is purely one of law, our standard of review is de novo. (*Thomsen v. City of Escondido* (1996) 49 Cal.App.4th 884, 890.)

Where an otherwise valid local ordinance conflicts with the state's general law, that ordinance is preempted, and thus void. (*City of Riverside v. Inland Empire Patients Health & Wellness Center, Inc.* (2013) 56 Cal.4th 729, 743 (*Riverside*); *Sherwin-Williams Co. v. City of Los Angeles* (1993) 4 Cal.4th 893, 897 (*Sherwin-Williams*).) " ' "A conflict exists if the local legislation ' "duplicates, contradicts, or enters an area fully occupied by general law, either expressly or by legislative implication." ' " ' " (*City of Riverside*, at p. 743.) Local legislation "duplicates" state law " 'when it is coextensive therewith.' " (*Ibid*.) It "contradicts" state law " 'when it is inimical thereto.' " (*Ibid*.) And it " 'enters an area that is "fully occupied" by general law when the Legislature has expressly manifested its intent to "fully occupy" the area [citation], or when it has impliedly done so in light of' " certain indicia of intent. (*Ibid*.)

The burden of proving preemption rests on appellants as the parties asserting it. (*Big Creek Lumber Co. v. County of Santa Cruz* (2006) 38 Cal.4th 1139, 1149 (*Big Creek*).) That burden is especially heavy where "there is a significant local interest to be served which may differ from one locality to another." (*Ibid*.) In such cases, a " 'presumption favors the validity of the local ordinance against an attack of state preemption.' " (*Ibid*.) "[W]hen local government regulates in an area over which it traditionally has exercised control," such as land use legislation, "California courts will presume, absent a clear indication of preemptive intent from the Legislature, that such regulation is *not* preempted by state statute." (*Ibid*.; see also *Riverside*, *supra*, 56 Cal.4th at p. 743; *Browne v. County of Tehama* (2013) 213 Cal.App.4th 704, 719.) Conversely, "if the subject matter is one of general or statewide concern, the Legislature has

7

paramount authority," and a rebuttable presumption arises that state statutes preempt local legislation covering the same matter. (*Northern Cal. Psychiatric Society v. City of Berkeley* (1986) 178 Cal.App.3d 90, 106-107 & fn. 4 (*Psychiatric Society*).)

Appellants argue that section 3304's source-of-income housing discrimination provision is preempted on two theories. First, they argue that FEHA expressly preempts section 3304's source-of-income provision. Pointing to the language of section 12993, subdivision (c) that expresses "the intention of the Legislature to occupy the field of regulation or discrimination in employment and housing encompassed by the provisions of this part," they argue that FEHA "expressly occupies the field of source of income housing discrimination to the exclusion of all local laws." Second, appellants argue that FEHA impliedly preempts San Francisco's source-of-income discrimination provision because FEHA leaves a landlord free to choose whether to participate in the Section 8 housing program, whereas section 3304 compels participation. The ordinance thus "directly contradicts the policy choice made by the [L]egislature in FEHA," appellants argue.

For the reasons explained below we disagree, and conclude that section 3304 is valid and enforceable to the extent that it prohibits landlords from discriminating against Section 8 tenants.

**I.** *Express Preemption of an Area Occupied by State Law*

"Express field preemption turns on a comparative statutory analysis: What field of exclusivity does the state preemption clause define, what subject matter does the local ordinance regulate, and do the two overlap?" (*California Grocers Assn. v. City of Los Angeles* (2011) 52 Cal.4th 177, 188 (*California Grocers*).)

**A. FEHA's Field of Exclusivity**

The parties and amici offer three different answers to the first question, as to what field of exclusivity FEHA's preemption clause defines. The People's answer is the narrowest: FEHA's field of exclusivity reaches no further than the forms of discrimination that FEHA itself covers. The practice of refusing to rent to Section 8 participants is one that FEHA does not address, so FEHA does not preempt an ordinance

8

addressing this practice, the People argue. A brief submitted by the San Francisco Apartment Association and others (collectively the Apartment Association) takes the opposite view. FEHA's field of exclusivity reaches *all* forms of discrimination in employment and housing, the Apartment Association argues. On this view, section 3304 is preempted simply because it is local legislation banning a form of discrimination in housing.

Appellants take a middle ground. They argue that FEHA's express preemptive reach extends no further than the categories of housing discrimination specifically set forth in the statute. Government Code section 12955, subdivision (a) prohibits discrimination on the basis of 14 categories, among them "race, color, religion, . . . [and] source of income. . . ." Appellants argue that, as to each of these 14 categories, FEHA expressly preempts local regulation, and FEHA preempts section 3304 because the ordinance outlaws discrimination based on one of these 14 factors—source of income. In their reply brief, appellants concede that FEHA does not preempt local ordinances addressing housing discrimination based on attributes other than the 14 listed in Government Code section 12955, subdivision (a), for example age discrimination in housing. (See *Rental Housing Assn. of Northern Alameda County v. City of Oakland* (2009) 171 Cal.App.4th 741, 761 (*Rental Housing*).)[2]

We think the People have the better argument in narrowly defining FEHA's field of exclusivity. Consider the statutory language. The Legislature expressed its intention "to occupy the field of regulation of discrimination in employment and housing *encompassed by the provisions of this part . . . .*" (Gov. Code, § 12993, subd. (c), italics added.) The most natural reading of the italicized language is that it modifies the phrase that precedes it. That is, it narrows the occupied field from all "regulation of

---

[2] At oral argument, appellants attempted to walk back this concession. Without abandoning the argument in their brief, which counsel characterized as their stronger argument, appellants adopted in the alternative the Apartment Association's argument for a broad field of exclusivity. For clarity, we will continue identifying this alternative argument as the Apartment Association's theory.

9

discrimination in employment and housing" to only such regulation of discrimination as is "encompassed by the provisions of" Part 2.8 of the Government Code, or FEHA. (See Gov. Code, § 12900 et seq.) From this occupied field, "all other laws banning discrimination in employment and housing by any city, city and county, county, or other political subdivision of the state" are excluded, with an exception not relevant here allowing for local enforcement of the Unruh Civil Rights Act. (Gov. Code, § 12993, subd. (c); *Rojo*, *supra*, 52 Cal.3d at p. 78.) By adding the phrase "encompassed by the provisions of" FEHA, the Legislature has defined the field of exclusivity as those acts of discrimination that FEHA itself regulates.

Appellants do not so much quarrel with this analysis as seek to bring their challenge within it, arguing that FEHA's field of exclusivity reaches all source-of-income housing discrimination. Appellants argue that because FEHA expressly prohibits housing discrimination based on "source of income," the statute's field of exclusivity reaches any source-of-income housing discrimination ordinance, including section 3304. The problem with this argument is that it ignores FEHA's definition of "source of income." (Gov. Code, § 12955, subd. (p).) Section 12955 expressly defines the term, alone among the 14 categories of housing discrimination that it prohibits. It states, " ' "source of income" means lawful, verifiable income paid directly to a tenant . . . ,' " expressly excluding funds paid to the landlord on the tenant's behalf. If this definition, which all agree excludes Section 8 subsidies (see *Sabi*, *supra*, 183 Cal.App.4th at pp. 935, 942), is what FEHA means by "source of income," then we see no reason to enlarge the definition when analyzing preemption. The language of the statute provides no principled basis for tacking discrimination against Section 8 program participants onto FEHA's otherwise narrow field of exclusivity.

Appellants' middle-ground argument would have us include discrimination against Section 8 program participants within FEHA's field of exclusivity because of the way San Francisco drafted its ordinance to include Section 8 payments in the definition of "source of income." If San Francisco had instead defined "source of income" as FEHA does, and then added a separate provision outlawing discrimination against Section 8

10

tenants, FEHA would not preempt the Section 8 provision, according to this middle-ground argument, because participation in the Section 8 program is not one of FEHA's 14 enumerated categories. But it cannot be that San Francisco's drafting choice—to call discrimination against Section 8 participants "source of income" discrimination—somehow expands FEHA's field of exclusion. FEHA defines its own field of exclusivity, which comprises housing discrimination based on "source of income" as FEHA, itself, defines that term.

Appellants protest that this reading of the statutory language is so narrow that it renders FEHA's field of exclusivity meaningless. We disagree. Although narrow, this field of exclusivity acts to prevent cities and counties from enforcing their own laws regarding the kinds of discrimination in housing and employment that FEHA addresses. For example, local legislation cannot add to the remedies available for victims of racial discrimination in housing, nor create a cause of action with a more forgiving statute of limitations if a landlord discriminates based on a tenant's religion.

The Apartment Association avoids the problems with appellants' middle-ground approach by urging a much broader field of exclusivity. The Apartment Association argues that FEHA preempts *all* regulation of discrimination in housing and employment, but this interpretation of the statute runs up against problems of its own.

First, the language of FEHA's preemption clause cannot be read to stake out such a broad field of exclusion without rendering superfluous the statutory phrase "encompassed by the provisions of this part." (Gov. Code, § 12993, subd. (c).) Whenever possible, we "avoid a construction that makes some words surplusage," so as to give significance to all of the language the Legislature used to convey its purpose. (*Agnew v. State Bd. of Equalization* (1999) 21 Cal.4th 310, 330.) The Legislature characterized the field it intended FEHA to occupy as "the field of regulation of discrimination in employment and housing *encompassed by the provisions of this part*," and we see no reason to read the italicized language out of this description of the field.

Second, the Apartment Association's interpretation runs contrary to cases that have more narrowly construed FEHA's preemptive reach. Most recently, *Rental Housing*

11

holds that FEHA does not preempt an ordinance prohibiting certain age discrimination in housing. (*Rental Housing, supra,* 171 Cal.App.4th at p. 761.) The court reaches this conclusion for two reasons, one being that FEHA does not address age discrimination in housing, and FEHA's preemption clause "limit[s] the preemptive reach of the FEHA to discrimination on the basis of the grounds explicitly covered by the FEHA." (*Rental Housing*, at p. 762, fn. 15; see also *San Jose Country Club Apartments v. County of Santa Clara* (1982) 137 Cal.App.3d 948, 952 [FEHA does not preempt ordinance addressing age discrimination in housing].) An earlier case reached a similar result, finding no preemption of a local ordinance prohibiting housing discrimination against people with HIV or AIDS. (*Citizens for Uniform Laws v. County of Contra Costa* (1991) 233 Cal.App.3d 1468, 1473 (*Citizens*).) When *Citizens* was decided, FEHA's list of protected categories for housing discrimination did not address physical handicap, HIV, or AIDS, although FEHA did outlaw employment discrimination on this basis. (*Citizens*, at p. 1473.) In *Citizens*, the court observed it was at least "arguable that FEHA does not occupy the field of housing discrimination based on physical handicap," but then resolved the case on the grounds that the local ordinance did not occupy the same field as FEHA because the ordinance was a pressing public health measure, while FEHA's purpose was "to protect civil rights." (*Citizens*, at pp. 1474-1475.)

Third, the Apartment Association's interpretation ignores the presumption against preemption when a local government regulates land use. Well-established under the California Constitution is the principle that "a municipality has broad authority, under its general police power, to regulate the development and use of real property within its jurisdiction to promote the public welfare." (*California Building Industry Assn. v. City of San Jose* (2015) 61 Cal.4th 435, 455.) Exercising these police powers, local governments can interfere in the private housing market, for example with inclusionary housing ordinances that require residential builders to set aside a certain percentage of new units as affordable housing. (*Id*. at pp. 442-444.) Indeed, state law tasks local governments with adopting plans of action to assist in meeting the housing needs of their low-income households. (*Id*. at p. 445.) An ordinance prohibiting discrimination against Section 8

12

program participants thus fits well within the sphere of land use regulation in which local ordinances are presumptively valid. [3] Courts require "a clear indication of preemptive intent from the Legislature" before finding that a state statute preempts such regulation. (*Big Creek*, *supra*, 38 Cal.4th at p. 1149.) Even the Apartment Association concedes that the phrase "encompassed by the provisions of this part" introduces ambiguity into FEHA's preemption clause. In the face of any such ambiguity, we cannot conclude that FEHA's preemptive reach extends to local concerns such as discrimination against participants in the Section 8 program.

The Apartment Association protests that the California Supreme Court has already construed FEHA's preemption clause as occupying the broad field of all local regulation of housing discrimination. They point to dicta in *Rojo*, a case in which the court held that FEHA does not preempt state common law remedies for housing discrimination. (*Rojo, supra*, 52 Cal.3d at p. 76.) In reaching this conclusion, the court confronted two ambiguities in the language of FEHA's preemption clause: whether "occupy the field" means to displace all law or only local law, and whether " '*exclusive of* all other laws' " passed by local governments means " 'to the exclusion of' " local laws, or something else. Analyzing legislative history, the court resolved these ambiguities. It concluded that, "consistent with the Legislature's intent to occupy the field of housing discrimination regulation, the fair housing act was to exclude all other *local* laws banning housing discrimination," except for those relating to enforcement of the Unruh Civil Rights Act. (*Rojo,* at pp. 76, 78, italics added.) But the court did not construe the phrase

---

[3] By contrast, *Delaney v. Superior Fast Freight* (1993) 14 Cal.App.4th 590, 596-598 (*Delaney*) (overruled in part on other grounds by *Claxton v. Waters* (2004) 34 Cal.4th 367), on which the Apartment Association relies, addresses discrimination in employment, which *Delaney* characterizes as a matter of statewide concern. (*Delaney,* at p. 598.) Employees working for a freight company move across jurisdictional boundaries, which real estate does not, and the ordinance at issue in *Delaney* barred employment discrimination on the basis of sexual orientation, a problem that, although FEHA did not yet reach it, was expressly addressed in the state's Labor Code. (*Delaney*, at pp. 596-598; see also *Psychiatric Society*, *supra*, 178 Cal.App.3d at p. 101.)

"encompassed by the provisions of this part," nor determine the field of exclusivity from which these local laws relating to housing discrimination were excluded. Because "cases are not authority for propositions not considered" (*People v. Alvarez* (2002) 27 Cal.4th 1161, 1176), *Rojo* sheds no light on the issue before this court.

Having defined FEHA's field of exclusivity, we turn now to the related questions of what subject matter the local ordinance regulates, and whether that subject matter overlaps with FEHA's narrow field of exclusivity.

### B. FEHA's Overlap with the Subject Matter of Section 3304

Section 3304 is broad in scope, and while other portions of it may overlap with FEHA, Section 3304's prohibition on discrimination against participants in the Section 8 program does not. When the Board of Supervisors first amended section 3304 to add what it called "source of income" discrimination in 1998, there was no overlap between the subject matter of the ordinance and FEHA, so the "source of income" provision of the ordinance was not preempted at all. When FEHA was amended the following year, a portion of what section 3304 termed "source of income" discrimination came to duplicate a practice that FEHA now covers. Specifically, section 3304, like FEHA, outlaws discrimination based on the source of a tenant's lawful income, to the extent that income is paid directly to the tenant. For example, both section 3304 and FEHA outlaw discrimination against a tenant based on where she earns her wages, or whether she receives general assistance or private grant money that she then puts toward the rent. But this kind of discrimination is not our case.

The portion of section 3304's source-of-income provision that is relevant here is the portion that protects from discrimination tenants who receive rent subsidies paid to the landlord rather than directly to the tenant, including Section 8 subsidies from the San Francisco Housing Authority. All agree that FEHA's prohibition on source-of-income discrimination does not reach landlords avoiding the Section 8 program (*Sabi*, *supra*, 183 Cal.App.4th at p. 942), so the relevant portion of section 3304 does not overlap with FEHA's anti-discrimination provision. (Compare Gov. Code, § 12955, subds. (a), (p)(1) with S.F. Police Code, § 3304, subd. (a)(5).) The portion of section 3304 that protects

14

tenants receiving rental assistance paid directly to their landlords is, accordingly, not preempted.

The People argue that section 3304's source-of-income provision is not within FEHA's field of exclusivity because it serves a different purpose. Certainly case law provides authority for the proposition that "local laws are not preempted by state statutes when they serve different purposes." (*Rental Housing*, *supra*, 171 Cal.App.4th at p. 761; see also *Birkenfeld v. City of Berkeley* (1976) 17 Cal.3d 129, 149 [local legislation and state law "not necessarily in conflict" if their purposes are "sufficiently distinct"].) But we are mindful of the teaching of *California Grocers*, *supra*, 52 Cal.4th 177, that "[p]urpose alone is not a basis for concluding a local measure is preempted." (*Id.* at p. 190 & fn. 4.) Instead of purpose, *California Grocers* focuses us on "whether the effect of the local ordinance is in fact to regulate in the very field the state has reserved to itself," which is a succinct summary of the approach for analyzing express preemption. (*Id.* at p. 191.)

In this case, whether one focuses on purpose or effect the result is the same because of the way FEHA itself defines its purpose. Government Code section 12920, recites the 14 categories of housing discrimination that FEHA forbids and then states, "the purpose of [FEHA is] to provide effective remedies that will eliminate *these* discriminatory practices." (Gov. Code, § 12920, italics added.) In other words, the purpose of FEHA is precisely as broad—and as narrow—as the field of exclusivity that FEHA's preemption clause demarcates. The statute's purpose is "to provide effective remedies" for the 14 categories of "discriminatory practice[]" that FEHA itself addresses. All agree that FEHA does not reach the discriminatory practice of a landlord refusing to rent to a participant in the Section 8 program. This means that San Francisco's ordinance prohibiting such conduct has, by definition, a different purpose from FEHA. To the extent that "purpose" is relevant in analyzing whether state law expressly preempts an ordinance, the analysis only confirms our view that, to the extent San Francisco's ordinance prohibits landlords from opting out of the Section 8 program, FEHA does not expressly preempt it.

15

**II.** *Implied Preemption*

Appellants argue in their opening brief that FEHA not only expressly preempts section 3304, but it does so by implication because FEHA embodies a policy choice that Section 3304 directly contradicts. Appellants argue that the Legislature chose to leave to landlords the decision whether they would participate in the Section 8 program, and section 3304 deprives landlords of this choice.

To the extent that appellants are urging the " 'contradictory and inimical' form of preemption," their argument fails because section 3304 does not "require[] what the state statute forbids or prohibit[] what the state enactment demands." (*Riverside*, *supra,* 56 Cal.4th at p. 743.) FEHA does not expressly authorize landlords to abstain from participating in Section 8, nor does it clearly promote this practice. A landlord who does not discriminate against Section 8 tenants complies with both FEHA and section 3304. This means there is no inherent contradiction between FEHA and the San Francisco ordinance, and no preemption on this theory. (See also *Sherwin-Williams*, *supra*, 4 Cal.4th at p. 902.) *Psychiatric Society*, the primary case on which appellants rely, is distinguishable because there the state statute expressly stated its purpose was to assure the "free choice" of patients to undergo a medical procedure that the local ordinance prohibited. (*Psychiatric Society, supra*, 178 Cal.App.3d at p. 105.) Here, FEHA expresses no similar preference for leaving to landlords the decision whether or not to participate in the Section 8 program.

To the extent that appellants are urging preemption on a theory of implied field preemption, their argument likewise fails. Where, as here, the Legislature has expressly set forth the field it intends a statute to preempt, courts are reluctant to find preemption elsewhere. (*Big Creek*, *supra*, 38 Cal.4th at p. 1157.) Especially in a case such as this one, where the ordinance being challenged addresses a land use issue of local concern, we decline to find field preemption beyond the bounds expressly set forth by the Legislature in FEHA's preemption provision. (See *Psychiatric Society*, *supra*, 178 Cal.App.3d at p. 101.)

16

The challenged provision of Section 3304 is not preempted by implication or by contradiction.  It remains fully in force.

## DISPOSITION

We affirm the decision of the trial court and remand for further proceedings not inconsistent with this decision.  Appellants are to bear costs on appeal.

_____
Tucher, J.*

We concur:


_____
Richman, Acting P.J.


_____
Miller, J.


A149136


* Judge of the Alameda County Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.
Trial Judge:

18

| | |
|---|---|
| Trial Court: | San Francisco County Superior Court |
| Trial Judge: | Ronald E. Quidachay |
| Attorneys for Defendants and Appellants: | Law Offices of Edward Singer<br>Edward Charles Singer, Jr. |
| Attorneys for Amicus Curiae:<br>San Francisco Apartment Association,<br>San Francisco Association of Realtors,<br>Small Property Owners of San Francisco<br>Institute, and California Apartment<br>Association | Zacks Freedman & Patterson<br>Andrew Zacks<br><br>Law Office of Paul J. Katz<br>Paul J. Katz |
| Attorneys for Plaintiffs and Respondents: | Office of the City Attorney<br>Dennis J. Herrera<br><br>Yvonne R. Meré<br>Chief Attorney<br><br>Sara J. Eisenberg<br>Deputy City Attorney<br><br>Bradley A. Russi<br>Deputy City Attorney |
| Attorneys for Amicus Curiae<br>Tenants Together | Munger, Tolles & Olson LLP<br>Michael E. Soloff |