Filed 11/18/25  P. v. Vaughn CA4/1

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA


| | |
|---|---|
| THE PEOPLE,<br><br>   Plaintiff and Respondent,<br><br>   v.<br><br>DARYL VAUGHN,<br><br>   Defendant and Appellant. | D084678<br><br><br>(Super. Ct. No. SCN401093) |


APPEAL from a judgment of the Superior Court of San Diego County, Kelly C. Mok, Judge.  Affirmed.

Rachel Varnell, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Charles C. Ragland, Assistant Attorney General, A. Natasha Cortina and Liz Olukoya, Deputy Attorneys General, for Plaintiff and Respondent.

Daryl Vaughn appeals from a judgment after a jury found him guilty of numerous sexual offenses against two victims, H.D. (counts 1–7) and A.R. (counts 8–11).

With respect to H.D., the jury found Vaughn guilty of seven counts of committing a lewd or lascivious act by force or fear on a child under the age of 14 (Pen. Code, § 288, subd. (b)(1))[1] (counts 1–7).  With respect to counts 5, 6, and 7, the jury also found true special allegations under the One Strike law (§ 667.61)[2] that Vaughn had been convicted of offenses against more than one victim within the meaning of section 667.61, subdivisions (b), (c), and (e).

With respect to A.R., the jury found Vaughn guilty of two additional counts of committing a lewd or lascivious act by force or fear on a child under the age of 14 (§ 288, subd. (b)(1)) (counts 9, 11) and found true special allegations that Vaughn had been convicted of offenses against more than one victim within the meaning of section 667.61, subdivisions (b), (c), and (e). The jury also found Vaughn guilty of two counts of sexual intercourse with a child ten years old or younger (§ 288.7, subd. (a)) (counts 8, 10).

With respect to each of the section 288, subdivision (b) counts (counts 1–7, 9, 11), the jury also found true the special allegation that Vaughn engaged in substantial sexual conduct with the victim within the meaning of section 1203.066, subdivision (a)(8).  The trial court imposed an aggregate sentence of 95 years to life plus 32 years.

---

[1]     Unless otherwise specified, all subsequent statutory references are to the Penal Code.

[2]     The One Strike law "is an alternative sentencing scheme that applies when the prosecution pleads and proves specific aggravating circumstances in connection with certain sex offenses."  (*In re Vaquera* (2024) 15 Cal.5th 706, 712.)

On appeal, Vaughn claims: (1) there is insufficient evidence of his use of "force, violence, duress, menace, or fear" to support the jury's verdicts on count 2, 3, and 4 against H.D. (§ 288, subd. (b)(1)); (2) the prosecutor committed misconduct by arguing to the jury that Vaughn had failed to prove why the victims would lie; (3) his sentence amounts to cruel and/or unusual punishment under the state and federal constitutions; and (4) the trial court abused its discretion in imposing a $300 restitution fine. With respect to these final three claims, Vaughn argues, in the alternative, that his counsel was ineffective in failing to raise an appropriate objection at trial. We affirm the judgment.

FACTUAL BACKGROUND

A. *The People's evidence*

1. *Counts 1–7 (victim H.D.)*

S.D. gave birth to H.D. in 2003 when S.D. was 16 years old. H.D. did not live with S.D. when H.D. was a young child. When she was about nine years old, H.D. began to live with S.D. and S.D.'s boyfriend, Vaughn, along with Vaughn's stepfather and H.D.'s three brothers.

According to H.D., at around this same time, Vaughn began to sexually abuse her. H.D. stated that the abuse continued from the time when was nine until she was 15.

As described in detail below, during the first incident, H.D. stated that Vaughn took H.D. into the bathroom and touched H.D.'s vagina with his hand and attempted to put his penis in her vagina. During another incident when H.D. was nine, H.D. said that Vaughn placed his penis on her lips and attempted to have her orally copulate him.

In 2015, after Vaughn attempted to sexually assault H.D. in a hotel room, H.D. told S.D. that Vaughn had been touching her inappropriately.

According to H.D., S.D. became angry at her because H.D. had not disclosed the abuse previously. S.D. angrily confronted Vaughn, and the family drove to the police station. Although H.D. told the police that she had been having sex with Vaughn, Vaughn was not arrested. Instead, according to H.D., the family, including H.D. went back to the hotel and stayed there that same night.

The family moved to a townhouse when H.D. was about 13. H.D. testified that, during this period, Vaughn began to use his hand to touch her vagina more often, doing so more than once a week. H.D. also said that Vaughn put his penis into her vagina more than a total of five times.

H.D. recalled one such incident occurred while she was lying on a bed between her mother and Vaughn. Her mother was asleep. H.D. was lying on her stomach. Vaughn got on top of H.D. and put his penis inside her vagina. Her mother remained asleep. H.D. did not try to wake her because she was not sure if her mother would help her. H.D. said that she felt this way because the first time she told her mother of the abuse, her mother "didn't listen," and the abuse continued.

H.D. testified that on another occasion, her brother J.D. walked in on Vaughn penetrating her. However, when H.D. tried to talk to J.D. about the incident, J.D. claimed that he had not seen anything.

H.D. explained that she eventually ran away from home when Vaughn's behavior became erratic, leading her to become "terrified."

2. *Count 8–11 (victim A.R.)*

A.R. is S.D.'s sister and H.D.'s aunt. A.R., however, is younger than H.D. When A.R. was nine years old, and she lived out of town, she and her family stayed with Vaughn and his family.

4

One day during their visit, A.R. was sitting on the top bunk of a bunk bed watching a movie with J.D. Vaughn was on the bottom bunk. During the movie, Vaughn asked A.R. to come to the bottom bunk. After she did so, Vaughn asked her if she could keep a secret. Vaughn then pushed A.R.'s shoulders down, laid her on the bed, pulled her pants and underwear down, got on top of her, and placed his penis inside her vagina. J.D. remained on the top bunk the entire time. A.R. did not think that J.D. saw what happened.

A few days later, Vaughn grabbed A.R. and led her to a bathroom in his residence and closed the door as they entered. Vaughn picked A.R. up and put her on the bathroom counter. Vaughn then pulled their pants and underwear down. Vaughn put his penis in A.R.'s vagina and again had intercourse with her. A.R. recalled Vaughn putting his semen in a bowl after he ejaculated.

B. *The defense*

J.D. testified that he had never seen Vaughn molesting H.D. and he denied having "walk[ed] in" on any such molestation. J.D. also said that he never recalled a time when he was on the top bunk of a bunk bed with A.R. and Vaughn was on the bottom bunk, and that he never saw Vaughn abusing or molesting A.R. Vaughn's stepfather testified that he never saw Vaughn abuse H.D. Vaughn denied having sexually abused either H.D. or A.R.

During his closing argument, defense counsel argued that "[l]ack of evidence, lack of corroboration, and lies" were the reasons that Vaughn was not guilty. Specifically, counsel argued that no one in the family witnessed the abuse, there was no DNA or other physical evidence pointing to Vaughn's guilt, and the case depended on the testimony of "two people" who lacked credibility and who had both lied. Counsel also emphasized that Vaughn had

"always maintained his innocence," and had testified truthfully that he had not committed any of the abuse.

## DISCUSSION

A.    *There is sufficient evidence of Vaughn's use of "duress" (§ 288, subd. (b)(1)) to support the jury's verdicts on counts 2, 3, and 4*

Vaughn claims there is insufficient evidence of his use of "force, violence, duress, menace, or fear" to support the jury's verdicts on counts 2, 3, and 4 involving victim H.D. (§ 288, subd. (b)(1).) The People argue that there is sufficient evidence in the record of Vaughn's use of duress to support the jury's verdicts on these counts.[3]

In reviewing a challenge to the sufficiency of the evidence to support a conviction, "the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." (*Jackson v. Virginia* (1979) 443 U.S. 307, 319.) "[T]he court must review the whole record in the light most favorable to the judgment below to determine whether it discloses substantial evidence—that is, evidence which is reasonable, credible, and of solid value—such that a reasonable trier of fact could find the defendant guilty beyond a reasonable doubt." (*People v. Johnson* (1980) 26 Cal.3d 557, 578.)

"Section 288[, subdivision] (a) prohibits the commission of a lewd or lascivious act on a child under age 14 done with the intent to arouse or satisfy the sexual desires of the perpetrator or the child. Section 288

---

[3]    The People also argue that there is sufficient evidence of Vaughn's use of *force* or *fear* in committing these offenses. For the reasons explained below, we conclude that the jury's verdicts on counts 2, 3, and 4 are supported by sufficient evidence of Vaughn's use of *duress*. Accordingly, we need not consider the People's additional arguments in support of the verdicts.

6

[subdivision] (b)(1) further prohibits the commission of such an act "by use of force, violence, *duress*, menace, or fear of immediate and unlawful bodily injury on the victim or another person. . . ." (*People v. Soto* (2011) 51 Cal.4th 229, 237, italics added (*Soto*).)[4]

" '[D]uress,' as used in section 288[, subdivision] (b)(1), means ' "a direct or implied threat of force, violence, danger, hardship or retribution sufficient to coerce a reasonable person of ordinary susceptibilities to (1) perform an act which otherwise would not have been performed or, (2) acquiesce in an act to which one otherwise would not have submitted." ' " (*Soto, supra*, 51 Cal.4th at p. 246, italics omitted.)[5]

Duress is a form of "psychological coercion." (*People v. Cochran* (2002) 103 Cal.App.4th 8, 15 (*Cochran*).) For example, "[a] threat to a child of adverse consequences, such as suggesting the child will be breaking up the family or marriage if she reports or fails to acquiesce in the molestation, may

---

[4] Section 288 provides in relevant part:
"(a) . . . [A] person who willfully and lewdly commits any lewd or lascivious act . . . upon or with the body, or any part or member thereof, of a child who is under the age of 14 years, with the intent of arousing, appealing to, or gratifying the lust, passions, or sexual desires of that person or the child, is guilty of a felony and shall be punished by imprisonment in the state prison for three, six, or eight years.
"(b)(1) A person who commits an act described in subdivision (a) by use of force, violence, duress, menace, or fear of immediate and unlawful bodily injury on the victim or another person, is guilty of a felony and shall be punished by imprisonment in the state prison for 5, 8, or 10 years."

[5] The trial court instructed the jury with CALCRIM No. 1111 in relevant part as follows: "Duress means the use of a direct or implied threat of force, violence, danger, hardship, or retribution sufficient to cause a reasonable person to do or submit to something that he or she would not otherwise do or submit to. [¶] When deciding whether the act was accomplished by duress, consider all the circumstances, including the age of the child and her relationship to the defendant."

7

constitute a threat of retribution and may be sufficient to establish duress, particularly if the child is young and the defendant is her parent." (*Ibid*.)

"In determining whether a sexual offense was accomplished by duress, the trier of fact must consider the totality of the circumstances." (*People v. Martinez* (2024) 105 Cal.App.5th 178, 189 (*Martinez*).) "The totality of the circumstances includes the victim's age, her relationship to the perpetrator, threats to harm the victim, physically controlling the victim when the victim attempts to resist, warnings to the victim that revealing the molestation would result in jeopardizing the family, and the relative physical vulnerability of the child." (*People v. Thomas* (2017) 15 Cal.App.5th 1063, 1072 (*Thomas*).)

With respect to a victim's "relationship to the perpetrator" (*Thomas, supra*, 15 Cal.5th at p. 1072), evidence that the defendant is an "authority figure" to the victim is among the circumstances a jury may consider in determining whether duress is present. (*People v. Senior* (1992) 3 Cal.App.4th 765, 775 (*Senior*).) For example, in *People v. Veale* (2008) 160 Cal.App.4th 40 (*Veale*), the court noted that " '[A]s a factual matter, when the victim is as young as this victim and is molested by her father in the family home, in all but the rarest cases duress will be present.' " (*Id.* at p. 49, quoting *Cochran, supra*, 103 Cal.App.4th at p. 16, fn. 6.) The *Veale* court added, "Although in the instant case, defendant was [the victim's] stepfather, rather than her father, he held a similar position of authority in [the victim's] home, which would support a finding of duress, along with victim's testimony she feared defendant." (*Veale*, at p. 49.)

According to the operative third amended information, the challenged counts – counts 2, 3, and 4 – pertained to three instances in which Vaughn touched H.D.'s vagina with his hand. The information further alleged that

counts 2, 3, and 4 pertained to the "first time," "second time," and "last time" respectively that Vaughn committed such conduct. (Capitalization omitted.)

During his closing argument, the prosecutor told the jury, "The next three counts, so Counts 2, 3, and 4, the defendant put his hand on [H.D.'s] vagina." And, the prosecutor noted that although H.D. had testified that "this happened a lot," consistent with the operative third amended information, the prosecutor explained Vaughn's use of his hand to touch H.D.'s vagina was "charged three times," and that counts 2, 3, and 4 pertained to the "first time, second time, last time."

With respect to count 2, "the first time" that Vaughn touched H.D.'s vagina with her hand, H.D. testified that she was nine years old. Vaughn was in his late 20s. The jury could reasonably find that H.D.'s young age, as well as the difference between her age and Vaughn's and the presumed physical size differential between her and Vaughn at the time of the offense all supported a finding of the use of duress. (See *Veale, supra*, 160 Cal.App.4th at p. 49; *People v. Pitmon* (1985) 170 Cal.App.3d 38, 51 ["The disparity in physical size between an eight-year-old and an adult also contributes to a youngster's sense of his relative physical vulnerability"].) In addition, S.D. testified that H.D. referred to Vaughn as "dad," which the jury could reasonably find supported the inference that H.D. viewed Vaughn as a parental and authority figure. The finding that H.D. viewed Vaughn as a father figure, when combined with H.D.'s young age, further supports a finding of the use of duress. (*Veale, supra*, 160 Cal.App.4th at p. 49.)

The manner by which H.D. testified that Vaughn committed count 2 additionally supports a finding of the use of duress. H.D. testified that Vaughn took her into a darkened bathroom and closed the door. While she was sitting on a counter, Vaughn pulled down H.D.'s pants and underpants.

9

The jury could reasonably find that such acts amounted to evidence that Vaughn "attempt[ed] to isolate the victim and increase or maintain her vulnerability." (*Cochran, supra*, 103 Cal.App.4th at p. 15.)

H.D. further testified that, during the touching, Vaughn asked her if her cousin "touch[ed] [her] like this." The jury could reasonably find that this comment amounted to a form of "psychological coercion" (*Cochran, supra*, 103 Cal.App.4th at p. 15), through which Vaughn attempted to increase H.D.'s willingness to comply with his own inappropriate touching of her.

In addition, H.D. testified that, during the incident, she started to cry, and she told Vaughn that she was afraid of the dark. And, while Vaughn turned on the light, he did not stop molesting H.D., despite her obvious distress. Worse yet, H.D. testified that Vaughn took out his penis and attempted to penetrate her vagina with it. While H.D. stated that she was able to resist Vaughn from penetrating her vagina by closing her legs, Vaughn continued to "hump [her] inside [her] thighs." Such acts further support a finding of use of duress. (*Thomas, supra*, 15 Cal.App.5th at p. 1072 [concluding that "physically controlling the victim when the victim attempts to resist" supports a finding of use of duress]; *Cochran, supra*, 103 Cal.App.4th at p. 15 [concluding evidence of defendant's continuation of sexual abuse despite victim's expression of reluctance to participate in sexual acts supports finding of use of duress].)

Finally, H.D. described to the jury that, while Vaughn was touching her vagina with his hand, she felt "scared" and she agreed with the prosecutor that she felt like she "had to listen to [Vaughn]." H.D.'s testimony as to her feelings of fear and her need to obey, given the circumstances described above, additionally supports a finding of Vaughn's use of duress.

10

(See *Veale, supra*, 160 Cal.App.4th at pp. 48–49 [victim's "testimony that she feared defendant" supported finding of use of duress].)

With respect to the remaining counts, H.D. testified that Vaughn used his hand to touch her vagina more times than she could remember, and she explained that it happened more than five times and multiple times a month. H.D. also testified that she told her mother that Vaughn was "touching [her]," but that the molestations continued. Although not tied to a specific count, H.D. also testified that, even when she would "say no" to Vaughn's molestations, the conduct "would still continue." H.D. further explained that, on these occasions when she would rebuff him, Vaughn would be "mad and treat [her] different," including preventing her from "go[ing] outside." While H.D.'s testimony did not contain detailed descriptions of the manner by which Vaughn committed counts 3 and 4, the jury could reasonably find the requisite use of duress as to these counts in light of H.D.'s young age and relationship with Vaughn, Vaughn's use of duress to commit the first touching, and H.D.'s generic testimony as to the manner by which Vaughn continued to engage in such conduct. (See *Senior, supra*, 3 Cal.App.4th at p. 776 [stating that evidence of a defendant's use of duress in committing sexual offenses on a child relevant in determining whether the "later molestations were accomplished by duress"]; *Martinez, supra*, 105 Cal.App.5th at p. 189 [trier of fact "must consider the totality of the circumstances" in determining whether duress was used].)

In sum, we conclude the record contains substantial evidence that Vaughn "use[d] . . . duress" to commit the lewd and lascivious acts charged in counts 2, 3, and 4. (*Soto, supra*, 51 Cal.4th at p. 237.)

B.    *Vaughn forfeited his claim that the prosecutor committed misconduct during closing argument; the prosecutor did not commit any misconduct in any event*

Vaughn claims that the prosecutor committed misconduct by arguing to the jury that Vaughn had failed to prove why the victims would lie. Vaughn maintains that, in so arguing, the prosecutor improperly attempted to reduce the People's burden of proof by suggesting to the jury that Vaughn had the burden to produce evidence or prove his innocence.

While Vaughn does not contend that defense counsel raised an objection to the prosecutor's argument at trial, he urges this court to exercise our discretion to consider the claim on the merits. He further claims that, should we decline to do so, his counsel was ineffective for failing to raise an appropriate objection.

1. *Background*

Just before closing argument, the trial court instructed the jury that "[a] defendant in a criminal case is presumed to be innocent" and that "[t]his presumption requires that the People prove the defendant guilty beyond a reasonable doubt." The court also instructed the jury that the People had the burden of proving the substantial sexual contact and One Strike allegations beyond a reasonable doubt.

Both the prosecutor and defense counsel also remarked during their closing arguments that the People bore the burden of proving the elements of the crimes. The prosecutor told the jury: "You heard many times the burden of proof. I'm going to go over it very briefly. It's explained quite well much better than I can do in your jury instructions, but it's proof beyond a reasonable doubt. And what that means is what I told and what the defense told you in voir dire, it's on me."

12

Defense counsel stated, "It is not my job to prove his innocence to you. It is the prosecutor's job to prove that Mr. Vaughn is guilty beyond a reasonable doubt. We discussed, I think with [the prosecutor] as well, that I can sit there and do nothing. And if at the end of the day he does not prove his case beyond a reasonable doubt, you must find him not guilty." Shortly thereafter, defense counsel reiterated, "Mr. Vaughn, is innocent until proven guilty. And the [prosecutor] . . . must prove that he's guilty beyond a reasonable doubt."

Vaughn maintains that the prosecutor committed misconduct during his closing argument by making the following statements about the victims: "That's something you've got to ask yourself. What's their reason to lie? What's the motive to lie? [¶] The defendant has one and he testified. We know what his is. We know what [Vaughn's stepfather's] is. We know what [S.D.'s] is. She may not know what it is, but we know what hers is. [¶] What's [H.D.'s] and [A.R.'s] motive to lie?"

Vaughn also argues that this portion of the prosecutor's closing argument was improper: "Again, burden of proof is simple. What's reasonable? And that's what you have to ask yourself when you're back there. Is it reasonable to think that [H.D.] was lying when she was up there?"

Vaughn further contends that the prosecutor's rebuttal closing argument was improper insofar as he argued the following: "W-H-Y? Why? Burden of proof, presumption of innocence; those are the two most important things in this case. This is the next: Why? Why would [H.D.] come in here and lie? Why would [A.R.] come in here and lie? [¶] We know why the defendant would. We know why [S.D.] would. And we know why [Vaughn's stepfather] would. [¶] Why would the victims? Ask yourselves that

13

question.  The defense talked about lies.[6]  What lies?  Where has there been any proof that there are lies?  There hasn't been.  There is no proof of lies.  [¶]  [A.R.] was proven to lie?  By who[m]?  [J.D.] said he didn't see anything.  Because there were other people in the house, that means [A.R.'s] is lying?  There was no proof that she lied."

2. *Governing law*

"The general rule is that a defendant may not complain on appeal of prosecutorial misconduct unless in a timely fashion—and on the same ground—the defendant made an assignment of misconduct and requested that the jury be admonished to disregard the impropriety." (*People v. Aguirre* (2025) 18 Cal.5th 629, 705 (*Aguirre*), internal quotation marks omitted.)  Notwithstanding the lack of such objection, a reviewing court may exercise its discretion to reach the merits of a claim of prosecutorial misconduct for various reasons, including to forestall a claim of ineffective assistance of counsel.  (See, e.g., *People v. Crittenden* (1994) 9 Cal.4th 83, 146 (*Crittenden*).)

"Wrongful conduct by a prosecutor 'violates the federal Constitution when it comprises a pattern of conduct so egregious that it infects the trial with such unfairness as to make the conviction a denial of due process.  [Citation.]  Prosecutorial misbehavior that falls short of this threshold violates state law when it involves the use of deceptive or reprehensible methods to attempt to persuade either the court or the jury." (*Aguirre, supra,* 18 Cal.5th at p. 706, internal quotation marks omitted.)  In considering whether the prosecutor's remarks amount to misconduct, a reviewing court does "not lightly infer that the jury drew the most damaging rather than the least damaging meaning from the prosecutor's statements." (*People v.*

---

6    As noted above, at trial, defense counsel argued to the jury that the victims had lied.

*Ramirez* (2022) 13 Cal.5th 997, 1129 (*Ramirez*), internal quotation marks omitted.)

In addressing claims of misconduct involving statements made during closing argument, [the California Supreme Court has] recognized that " ' "it is improper for the prosecutor to misstate the law." ' " (*Aguirre, supra*, 18 Cal.5th at p. 707.) In particular, it is improper for a prosecutor " 'to attempt to absolve the prosecution from its prima facie obligation to overcome reasonable doubt on all elements [citation].' " (*People v. Cortez* (2016) 63 Cal.4th 101, 130.)

A prosecutor, however, does not improperly attempt to shift the burden of proof merely by commenting on the state of the evidence, even when the prosecutor's argument refers to the defendant's failure to contradict evidence offered by the prosecution. (See *People v. Bradford* (1997) 15 Cal.4th 1229, 1338–1339 (*Bradford*); *People v. Weaver* (2012) 53 Cal.4th 1056, 1077 ["It was not misconduct to observe that defense counsel had failed to explain how this evidence could be reconciled with the conclusion that anyone other than defendant had committed the charged offenses"].)

For example, in *Bradford*, the Supreme Court noted that, during his closing argument, the prosecutor had argued that the defense failed to present evidence on numerous issues in the case. (*Bradford, supra*, 15 Cal.4th at pp. 1338–1339.) The *Bradford* court explained, "[T]he prosecutor, in arguing that the victims had been killed for pleasure, noted 'there is no evidence to the contrary.' In commenting on a stain that possibly was blood, found on a mat inside the trunk of defendant's vehicle, the prosecutor pointed out to the jury that 'no evidence has been introduced by [the defense] on that issue.' The prosecutor also observed that the defense did not call an expert witness to testify contrary to the conclusions reached by the coroner with

regard to the time frame of [one victim's] death, although defendant 'certainly is free to call his own witness to testify to those facts.' In discussing the time period during which [a second victim] had been killed, the prosecutor noted that defendant 'presented no alibi witnesses for that time period,' nor 'photographs to prove where he was.' " (*Ibid.*)

In rejecting the defendant's argument that such argument amounted to an effort to lessen the People's burden of proof, the *Bradford* court reasoned: "A distinction clearly exists between the permissible comment that a defendant has not produced any evidence, and on the other hand an improper statement that a defendant has a duty or burden to produce evidence, or a duty or burden to prove his or her innocence." (*Bradford, supra*, 15 Cal.4th at p. 1340; accord *People v. Nadey* (2024) 16 Cal.5th 102, 159 (*Nadey*) [referring to "long-standing case law allowing . . . commentary on the defense's failure to introduce material evidence or call logical witnesses"].)

Nor is it improper for a prosecutor to argue from the evidence that a witness lacks a motive to lie. (See, e.g., *People v. Rodriguez* (2020) 9 Cal.5th 474, 480 (*Rodriguez*) [concluding that "the prosecutor's argument generally asking, 'what motive would [witness] have to lie?' [citation], was proper because it did not 'suggest the prosecutor had personal knowledge of facts outside the record showing [witness] was telling the truth' or 'invite[] the jury to abdicate its responsibility to independently evaluate for itself whether [witness] should be believed' "]; *People v. Boyette* (2002) 29 Cal.4th 381, 433 (*Boyette*) [rejecting defendant's argument that prosecutor improperly argued that witnesses "had no motive to lie," since the argument was "based on inferences from the evidence presented"].)

16

3. *Application*

At trial, Vaughn failed to raise any objection to the portions of the prosecutor's opening or rebuttal closing argument to which he objects on appeal. Thus, we conclude that he has forfeited his appellate claim pertaining to these remarks. (*Aguirre, supra*, 18 Cal. 5th at p. 704.) Notwithstanding Vaughn's forfeiture, we exercise our discretion to consider the merits of his claim to forestall consideration of his claim of ineffective assistance of counsel. (*Crittenden, supra*, 9 Cal.4th at p. 146.)

The bulk of the prosecutor's remarks referred to by Vaughn in his brief and quoted above pertain to the lack of any reason for the victims to lie and, as such, constituted appropriate comment on the evidence. (See *Rodriguez, supra*, 9 Cal.5th at p. 480; *Boyette, supra*, 29 Cal.4th at p. 433.) In presenting this argument, the prosecutor did not vouch for the victims or suggest that he was privy to evidence outside of the record that proved their testimony was true.

Nor did the prosecutor commit misconduct by arguing that the defense had failed to present any evidence demonstrating that the victims had a reason to lie. As noted above, it is well established that a prosecutor may comment on "the defense's failure to introduce material evidence or call logical witnesses," (*Nadey, supra*, 16 Cal.5th at p. 159) and the prosecutor's argument that the defense had failed to substantiate its contention that the victims were lying was proper under this case law. Finally, the prosecutor never stated that Vaughn carried a burden of proof or that the defense had a duty to present evidence. The prosecutor's remarks suggesting that the defense had failed to contradict evidence demonstrating that the victims would not lie was not reasonably likely to be understood by the jury as suggesting that the prosecutor had a lessened burden of proof, particularly in

light of the repeated references by the court and both counsel at trial reminding the jury that the prosecutor bore the burden of proof. (See, e.g., *Bradford, supra*, 15 Cal.4th at p. 1340 [drawing distinction between a prosecutor's comment of defendant's failure to present evidence and argument that defendant has a duty to prove his innocence]; *Ramirez, supra*, 13 Cal.5th at p. 1129 [courts will "not lightly infer" most damaging meaning from prosecutor's comments (internal quotation marks omitted)].)

Nor were the prosecutor's comments in this case anything like the comments made in the principal cases on which Vaughn relies. In *People v. Cowan* (2017) 8 Cal.App.5th 1152, the prosecutor told "the jury that the presumption of innocence is in place 'only when the charges are read' and that the 'presumption is gone' thereafter." (*Id*. at p. 1159.) Here, in contrast, the prosecutor made no such statements, and in fact reminded the jury that the burden of proof was "on [him]."

In *People v. Woods* (2006) 146 Cal.App.4th 106, the prosecutor argued to the jury that "defense counsel was 'obligated' to put on evidence," (*id*. at p. 113) and the trial court overruled defense counsel's objection that "she was 'not obligated to do anything.' " (*Id*. at p. 112.) The prosecutor also vouched for a witness by suggesting to the jury that the prosecutor had "actual knowledge" that the witness had never engaged in any misconduct. (*Id*. at p. 113.) In contrast, in this case, the prosecutor did not state that the defense bore an obligation to present evidence and defense counsel reminded the jury, "I can sit there and do nothing." Moreover, as noted above, the prosecutor did not engage in any improper vouching for the victims.

Finally, in *People v. Hill* (1998) 17 Cal.4th 800, the prosecutor stated, " 'There has to be some evidence on which to base a doubt.' " (*Id*. at p. 831, italics omitted.) The prosecutor made no comparable comment in this case.

18

Accordingly, we conclude that Vaughn forfeited his claim of prosecutorial misconduct. Alternatively, upon exercising our discretion to consider the merits of his forfeited claim, we conclude the prosecutor did not commit misconduct in arguing to the jury that the defense had presented no evidence demonstrating the victims had a reason to lie.[7]

C. *Vaughn forfeited his claim that his sentence amounts to cruel and/or unusual punishment; his claim is without merit in any event*

Vaughn claims that his sentence of 95 years to life plus 32 years amounts to cruel and/or unusual punishment under the state and/or federal constitutions. Vaughn argues in the alternative that, to the extent we conclude that Vaughn's cruel and/or unusual punishment claim is forfeited, we should "reach the merits of this claim" given his counsel's alleged ineffectiveness in failing to raise it in the trial court.

Vaughn properly acknowledges in his brief that courts have frequently concluded that "a defendant's failure to contemporaneously object that his sentence constitutes cruel and unusual punishment forfeits the claim on appellate review." (Citing, e.g., *People v. Speight* (2014) 227 Cal.App.4th 1229, 1247; see *ibid.* [collecting cases].) Vaughn also properly concedes that his counsel did not raise any such objection in this case. Accordingly, we conclude that Vaughn forfeited his claim that his sentence constitutes cruel and/or unusual punishment. Notwithstanding Vaughn's forfeiture, however, we exercise such discretion and consider the merits of Vaughn's cruel and/or unusual punishment claim in order to obviate consideration of his related

---

[7] In light of our consideration of Vaughn's claim of prosecutorial misconduct on the merits, we need not consider his alternative ineffective assistance of counsel claim.

19

ineffective assistance of counsel claim. (*Crittenden, supra*, 9 Cal.4th at p. 146.)

Vaughn claims that his aggregate sentence of 95 years to life plus 32 years constitutes cruel or unusual punishment because, as a sentence that exceeds his life expectancy, it serves no legitimate penal purpose. (Citing *Coker v. Georgia* (1977) 433 U.S. 584; see *id*. at p. 592 ["[A] punishment is 'excessive' and unconstitutional if it . . . makes no measurable contribution to acceptable goals of punishment and hence is nothing more than the purposeless and needless imposition of pain and suffering"].) Vaughn argues further, "Because there is no possible way that appellant will outlive his sentence of 95 years to life, plus 32 years, this Court should strike that sentence and remand so that the trial court may impose a sentence consistent with the federal constitution."

As the People note, however, the mere fact that a sentence *exceeds* a defendant's life expectancy does not render it unconstitutionally cruel or unusual, since such sentence is, in effect, a sentence of life without the possibility of parole. (*People v. Byrd* (2001) 89 Cal.App.4th 1373, 1382–1383 (*Byrd*).) As the *Byrd* court explained: "[I]t is immaterial that defendant cannot serve his sentence during his lifetime. In practical effect, he is in no different position than a defendant who has received a sentence of life without possibility of parole: he will be in prison all his life. However, imposition of a sentence of life without possibility of parole in an appropriate case does not constitute cruel or unusual punishment under either our state Constitution [citation] or the federal Constitution." (*Byrd*, at p. 1383.)

Further, numerous courts have rejected cruel and/or unusual punishment claims involving sentences exceeding any human's life expectancy. (See, e.g., *People v. Retanan* (2007) 154 Cal.App.4th 1219, 1231

[sentence of 135 years to life did not constitute cruel and/or unusual punishment]; *Byrd, supra*, 89 Cal.App.4th at pp. 1382–1383 [upholding sentence of 115 years plus 444 years to life against claim of cruel and/or unusual punishment]; *People v. Cartwright* (1995) 39 Cal.App.4th 1123, 1130, 1135–1136 [upholding sentence of 375 years to life plus 53 years].) Vaughn has not demonstrated why we should decline to follow such authority.

Accordingly, we conclude that Vaughn forfeited his claim that his sentence constitutes cruel and/or unusual punishment. Alternatively, we exercise our discretion to consider the merits of Vaughn's claim and conclude his sentence does not amount to cruel and/or unusual punishment.[8]

D. *The trial court did not commit reversible error in imposing a $300 restitution fine*

Vaughn claims that the trial court abused its discretion in imposing a $300 restitution fine.

At sentencing, the trial court imposed a $300 restitution fine (§ 1202.4, subd. (b)(1)) as well as two assessments and a fee. Defense counsel asked the trial court to "stay the balance of any fines or fees based on his . . . inability to pay."

The trial court responded by ruling as follows: "So what I'm going to do with the fines is any fines that this court can strike for an inability to pay, I will. My understanding is that the restitution fine, pursuant to [section] 1202.4[, subdivision] (b), requires compelling and extraordinary circumstances for this court to strike that fine. And inability to pay is not considered a compelling and extraordinary circumstance. [¶] So[,] I will impose the $300 for the restitution fine, finding that there isn't sufficient

---

8    In light of our consideration of Vaughn's cruel and/or unusual punishment claim on the merits, we need not consider his alternative ineffective assistance of counsel claim.

21

evidence of a compelling and extraordinary circumstance.  [¶]  I do understand that Mr. Vaughn does not have the ability to pay."

Section 1202.4, subdivision (b) mandates that, "In every case where a person is convicted of a crime, the court shall impose a separate and additional restitution fine, unless it finds compelling and extraordinary reasons for not doing so and states those reasons on the record."  The statute further provides that "[i]f the person is convicted of a felony, the fine shall not be less than three hundred dollars ($300)," (*id.*, subd. (b)(1)) and expressly directs that, "[a] defendant's inability to pay shall not be considered a compelling and extraordinary reason not to impose a restitution fine." (*Id.*, subd. (c).)

In *People v. Dueñas* (2019) 30 Cal.App.5th 1157 (*Dueñas*), the Court of Appeal "h[e]ld that although the trial court is required by . . . section 1202.4 to impose a restitution fine, the court must stay the execution of the fine until and unless the People demonstrate that the defendant has the ability to pay the fine." (*Id.* at p. 1172.)  The *Dueñas* court reached this holding based on its assessment of considerations of due process and the principle that courts must "interpret statutes to avoid serious constitutional questions when such interpretations are fairly possible." (*Ibid.*)[9]

Assuming without deciding that *Dueñas* was correctly decided, any error committed by the trial court in imposing the $300 fine is harmless beyond a reasonable doubt (*Chapman v. California* (1967) 386 U.S. 18, 24) because Vaughn will have "ample time to pay" the $300 fine through prison wages earned during his life sentence. (*People v. Johnson* (2019) 35

---

9    Other courts have disagreed with *Dueñas* (see, e.g., *People v. Allen* (2019) 41 Cal.App.5th 312, 326 [reviewing cases]), and the issue is currently pending before our Supreme Court.  (*People v. Kopp* (2019) 38 Cal.App.5th 47, review granted Nov. 13, 2019, S257844.)

Cal.App.5th 134, 139–140; *id.* at p. 139 [*Dueñas* error harmless: "The idea that [defendant] cannot afford to pay $370 while serving an eight-year prison sentence is unsustainable"]; see *People v. Jones* (2019) 36 Cal.App.5th 1028, 1035 [*Dueñas* error harmless: "Given that the restitution fine is $300 and the assessments are $70, [defendant] will have sufficient time to earn these amounts during his [six-year] sentence, even assuming [he] earns nothing more than the minimum."].) While Vaughn speculates in his reply brief that "it is extremely unlikely that [he] will be able to procure a job while he is incarcerated," he fails to point to any evidence in the record suggesting he is unable to work or will not be able to earn enough during his long incarceration to pay the restitution fine.

Accordingly, we conclude that the trial court did not commit reversible error in imposing the $300 restitution fine.[10]

DISPOSITION

The judgment is affirmed.

BUCHANAN, J.

WE CONCUR:

McCONNELL, P. J.

O'ROURKE, J.

---

[10] Vaughn also argues that "[a]ssuming [his] claim is forfeited on appeal because counsel did not object to the imposition of the state restitution fine pursuant to *Dueñas,* counsel was ineffective in failing to do so." We have not concluded that Vaughn's claim is forfeited. Thus, we need not consider his alternative ineffective assistance of counsel claim.